### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| Patricia J. Gibson, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.:  3:06-CV-974-MEF |
| | ) | |
| v. | ) | |
| | ) | |
| WestPoint Stevens, Inc., and | ) | |
| WestPoint Home, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM OPPOSING
### MOTION FOR PROTECTIVE ORDER BY DR. WHATLEY

COME NOW, the Defendants, WestPoint Stevens, Inc. ("WPS") and WestPoint Home, Inc. ("WPH") (collectively "WestPoint" or "Defendants"), and pursuant to Rules 26 and 45, submit the following:

### PROCEDURAL HISTORY

On October 27, 2006, Patricia J. Gibson ("Gibson" or "Plaintiff") filed this action against Defendants, alleging that Defendants discriminated against her on the basis of her age when WestPoint terminated her employment.  On December 7, 2006, WestPoint timely filed an Answer to Plaintiff's Complaint.  The parties are currently engaged in discovery.

### STATEMENT OF FACTS

WestPoint is a Georgia-based corporation which engages in the manufacture, marketing, and distribution of bed and bath products in the United States and Canada.  Plaintiff was formerly employed by WPS (and later WPH) as a Warper Operator in WPH's plant (formerly WPS' plant) in Valley, Alabama.  On August 8, 2005, WPH acquired substantially all of the assets of WPS pursuant to a July 8, 2005, Order of the United States Bankruptcy Court for the

Southern District of New York.  On August 26, 2005, WPH terminated its employment relationship with Plaintiff.

In her Complaint, Plaintiff seeks unspecified compensatory damages.  According to her Rule 26 Initial Disclosures, Plaintiff claims as damages "health conditions along with medical expenses."  (A true and correct copy of Plaintiff's Initial Disclosures is attached as Exhibit A; *see* response No. 2).

Based on Plaintiff's contention that she suffered "health conditions along with medical expenses" as a result of WPH's decision to terminate her employment, Defendants on March 13, 2007, sent counsel for the Plaintiff authorizations for Ms. Gibson to sign in order for the Defendants to obtain her medical records.  The letter noted that if the authorizations were not signed and returned to the Defendants' counsel or if no objections were made within fifteen (15) days, then the subpoenas which were also enclosed with the letter would be served on the various doctors.  (March 13 letter, attached as Exhibit B).  Plaintiff's counsel neither returned the authorizations nor objected.  Thereafter Defendants served subpoenas for documents on doctors from whom Plaintiff has sought medical treatment.[1]  The transmittal letters for the subpoenas observed that "notice was given to Ms. Gibson's attorney, pursuant to HIPAA… and [that]no objection to the subpoena [had been received] from Ms. Gibson's attorney as of this date." (March 30 letter, attached as Exhibit C).  In their subpoena, Defendants asked that the medical providers, including Dr. Whatley, produce a copies of:

> any and all records maintained in your custody pertaining to Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SS#XXX-XX-XXX, DOB 11/8/47, including but

---

[1]    The names of the doctors served with subpoenas were acquired from records in Defendants' possession.  In response to her Initial Disclosures and Defendants' First Interrogatories to Plaintiff, Plaintiff has failed to identify any doctors related to her "health conditions."

> not limited to medical records, treatment records, counseling records, narratives, nurse's notes, doctor's notes, diagnostic reports, x-ray reports, disability records, admission records, commitment records, referrals, work excuses, questionnaires, forms, applications, and any other record of any kind in your possession.  We want every piece of paper in your file relating to this patient.

(*See* Motion for Protective Order by James R. Whatley, M.D., at Ex. 1).

In response to the letter and subpoena to Dr. Whatley, on April 5, 2007, Plaintiff's counsel wrote a letter to Defendants' counsel, with a copy to Dr. Whatley, stating that "Plaintiffs in the above cases do not waive their objections to the subpoenas submitted to their physicians. Formal objections will follow to show cause why the objections should be upheld."[2]  (*See* Motion for Protective Order by Jamer R. Whatley, M.D. at Ex. 2).  On April 10, 2007, Plaintiff's counsel spoke with Defendants' counsel regarding Plaintiff's objections to the subpoenas. Specifically, Plaintiff's counsel objected that the request was "too broad and remote in time as it relates to this lawsuit and the issues in this case."  (*See* Motion for Protective Order by Jamer R. Whatley, M.D. at Ex. 3).

During the April 10 conference, Plaintiff's counsel stated that she had been on bereavement and medical leave during the 15-day period after Plaintiff received a copies of the subpoenas, and before the subpoenas were served.  However, during that period, Plaintiff's counsel did not file a request for protection with the Court, did not notify Defendants' counsel of her leave, and did not have anyone on her staff notify Defendants' counsel of this absence. Notwithstanding Plaintiff's counsel's absence and untimely objections, as of this date, Plaintiff has still not availed herself of her proper recourse in opposition to Defendants' subpoena –

---

[2]    Plaintiff's counsel also represents plaintiff Bobby Lee Sanks in another discrimination case filed against Defendants, *Sanks, v. WestPoint, Inc. et al.*, 3:06cv1092-MHT-CSC. Defendants also served subpoenas for medical records in the *Sanks* case.

namely, Plaintiff has not filed a motion to quash or modify Defendants' subpoena under Rule 45(c)(3)(A). After the April 10 conference with counsel for the Plaintiff, Defendants' counsel wrote Plaintiff's counsel, observing that the subpoenas were proper and stating that if "assurances were given that the physical and mental conditions of [the Plaintiff] would not be issues at trial, then the subpoenas [would] not be necessary" No such assurances were given. (April 16 letter, attached as Exhibit D).

Despite the relevant information sought by Defendants' subpoena to Dr. Whatley, and the proper service and notice of the subpoena, Plaintiff has not filed a motion to quash or modify the subpoena, but <u>has</u> obstructed the discovery process by writing two letters to Defendants' counsel (with copies to Dr. Whatley) indicating that she "objects" to the scope of the subpoena. Because of this interference with Defendants' proper service of a subpoena for relevant documents, Dr. Whatley filed an <u>untimely</u> "Motion for a Protective Order" in which he seeks no protection, but rather asks the Court for direction in whether to comply with his obligations under Defendants' subpoena. Dr. Whatley has not declared that he is unwilling to fully comply with Defendants' subpoena, but is asking the Court for direction because Plaintiff failed to follow the Rules. Dr. Whatley and Defendants have both been prejudiced by Plaintiff's obstruction of the discovery process because they have both been forced to spend time and money briefing an issue which has never been properly and timely put before the Court.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

I.   <u>DR. WHATLEY HAS NOT TIMELY SERVED WRITTEN OBJECTIONS OR FILED A MOTION FOR A PROTECTIVE ORDER RELATED TO DEFENDANTS' SUBPOENA DUCES TECUM</u>

The subpoena for documents served on Dr. Whatley is subject to Federal Rule of Civil Procedure 45. Under Rule 45 (c)(2)(B), "*a person commanded to produce and permit*

*inspection, copying…* may, *within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service*, serve upon the party or attorney designated in the subpoena written objection to producing any and all of the designated materials…." (emphasis added). Defendants' subpoena was served on March 30, 2007, with a scheduled date of production of April 16, 2007. Dr. Whatley never served any objections to Defendants' subpoena, but nevertheless failed to produce documents as required. Dr. Whatley did not file the instant Motion until May 17, 2007. Because Dr. Whately never served any objections to Defendants subpoena or filed a motion within fourteen (14) days of service of the subpoena (or before April 16, 2007), this Motion is untimely and should be denied.[3]

## II.    RULE 45'S STANDARDS PRESENT A "HEAVY BURDEN" ON THE PARTY OPPOSING A SUBPOENA

Dr. Whatley filed his Motion for Protective Order on May 17, 2007, over one (1) month after production was required by the subpoena. To quash or modify a subpoena under Rule 45, a party must demonstrate that the subpoena "(i) fails to allow reasonable time for compliance; (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person… (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or (iv) subjects a person to an undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv); *see also Tiberi v. Cigna Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994). Defendants subpoena provided greater than fourteen (14) days for compliance, did not require travel in excess of 100 miles, and does not require disclosure of attorney-client privileged or work-product protected

---

[3]    Because Dr. Whatley's Motion does not ask for any relief based upon the categories listed in Rule 45(c)(3)(A)(i)-(iv), in denying his Motion, the Court should compel Dr. Whatley to comply with Defendants' subpoena.

matters.  Hence, the party moving for protection from or to quash or modify a subpoena bears the burden of proving that the subpoena is unreasonable or oppressive.  *See Composition Roofers Union Local 30 v. Graveley Roofing Enterprises, Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995) (noting that the party moving to quash a subpoena under Rule 45 has a heavy burden of establishing that compliance with the subpoena would be "unreasonable and oppressive").  Indeed, "[r]elevancy, rather than admissibility, is the test in determining whether evidence sought by a subpoena *duces tecum* is proper, and discovery should be allowed unless it is palpable that the evidence sought can have no possible bearing on the issues."  *Steamship Co. of 1949, Inc. v. China Union Lines*, 123 F. Supp. 802, 805 (S.D.N.Y. 1954) (emphasis added).

Neither Whatley nor Plaintiff can satisfy this burden of demonstrating that Defendants' subpoena to Dr. Whatley subjects them to an undue burden.  Apparently recognizing that there is no undue burden in this case, Plaintiff objected that Defendants' subpoena was improper because it is overly broad in scope.[4]  However, where Plaintiff has put her "health conditions" in issue as an item of damages resulting from WPH's termination of her employment, Defendants are entitled to full discovery of Plaintiff's health history.  Any information related to treatment by Plaintiff's medical providers could be relevant to Plaintiff's alleged and unspecified "health conditions."  Dr. Whatley should be compelled to produce this relevant information.

---

[4]    As detailed above, written objections or a protective order are the means by which persons subject to a subpoena may object.  Here, Plaintiff is not subject to the subpoena to Dr. Whatley and her only recourse would have been to file a timely motion to quash or modify the subpoena.  Plaintiff did not do so and any such motion at this date is untimely and improper under the Rules.

## III.    DEFENDANTS' SUBPOENA SEEKS RELEVANT INFORMAITON

The Federal Rules of Civil Procedure permit broad discovery so that litigants may gain full knowledge of the issues of the case.  Indeed, the Federal Rules expressly allow for discovery of:

> any matter, not privileged, which is relevant to the subject matter involved in the pending action…. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  FED. R. EVID. 401.

As for subpoenas issued pursuant to Rule 45, the recipient of a subpoena "is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."  FED. R. CIV. P. 45, advisory committee notes; *see also Jackson v. Brinker*, 147 F.R.D. 189, 193-194 (S.D. Ind. 1993). ("The scope of materials obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules."). "Discoverable information is not limited to that which would be admissible at trial." *Richmond v. UPS Service Parts Logistics*, 2002 U.S. Dist. LEXIS 7496 (S.D. Ind. April 25, 2002) (attached as Exhibit E).  Where there is "a possibility" that the requested discovery might lead to "information relevant to the subject matter of the action, then the discovery should generally be allowed." *Elm Energy and Recycling v. Basic*, 1996 U.S. Dist. LEXIS 15255, *28-29 (N.D. Ill. October 8, 1996) (attached as Exhibit F).

Here, the Complaint makes clear that Plaintiff is seeking an award of compensatory damages for "health conditions" allegedly resulting from WPH's decision to terminate her

employment.  In order to determine whether these alleged, unspecified, "health conditions" resulted from WPH's termination of Plaintiff's employment, Defendants must be permitted to conduct full discovery of Plaintiff medical history.  To make this inquiry, Defendants must be afforded the opportunity to obtain documents related to Plaintiff's past medical treatment.  *See Workman v. Carolina Freight Carriers Corp.*, 1994 U.S. Dist. LEXIS 13878, *10 (M.D. Ala. April 8, 1994) (denying plaintiffs' motion for a protective order and motion to quash a subpoena for medical records to plaintiff's doctor) (attached as Exhibit G).  The requested medical documents should reveal the true source(s) of Plaintiff's alleged "health conditions" and are thus discoverable.

In accordance with the broad discovery parameters set forth in the Rules, it is clear that Defendants' subpoena to Dr. Whatley seeks relevant and discoverable information.  Because Defendants' subpoena seeks relevant information from Dr. Whatley, his Motion for Protective Order should be denied and he should be compelled to respond to Defendants' subpoena.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court deny the Motion for Protective Order and compel Dr. Whatley to produce the documents requested in the Defendants' subpoena *duces tecum* within seven (7) days of the Court's order.

Dated this 24th day of May, 2007.

Respectfully submitted,

**/s/ Fred W. Suggs, Jr.**
Fred W. Suggs, Jr.
(ASB-3587-G61F)

OGLTREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
300 North Main Street (29601)
Post Office Box 2757
Greenville, South Carolina 29602

Telephone: (864) 271-1300
Facsimile:  (864) 235-4754
Fred.Suggs@ogletreedeakins.com

James C. Pennington (ASB-1287-N62J)
OGLTREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Federal Place
1819 5th Avenue North, Suite 1000
Birmingham, Alabama  35203-2118
Telephone: (205) 328-1900
Facsimile:  (205) 328-6000
James.Pennington@odnss.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2007, I electronically filed the foregoing **Defendants'**

**Memorandum Opposing Motion for Protective Order by Dr. Whatley** with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the following:

Lateefah Muhammad

I further certify that I have mailed by United States Postal Service the document to the

following non-CM/ECF participant:

Robert H. Pettey, Jr.
Samford & Denson, LLP
P.O. Box 2345
Opelika, AL 36803-2345

Respectfully submitted,

**/s/ Fred W. Suggs, Jr.**
Fred W. Suggs, Jr.

4974043.1

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

COPY

| | | |
|---|---|---|
| PATRICIA J. GIBSON | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 03-06cv974-MEF-TFM |
| | ) | |
| WESTPOINT STEVENS, INC. | ) | |
|   et al., | ) | |
|     Defendants. | ) | |

## PLAINTIFF'S INITIAL DISCLOSURES

The Plaintiff, by and through her attorney of record, submits this Plaintiff's Initial Disclosure to the Defendants, by and through their counsel of record, pursuant to Rule 26(a)(1)(A-D). The Plaintiff reserves the right to supplement these Disclosures.

1.    The following individuals are likely to have discoverable information relevant to disputed facts. The subject information is shown next to each name:

a. Shannon Jennings Lyons - Plaintiff's replacement, age, date hired, duties;

b. Lelia Mae Dennis - Plaintiff's performance on the job;

c. Carrie Little McLemore - Plaintiff's performance on the job;

d. Troy Leveridge - Plaintiff's performance on the job;

e. James King - Plaintiff's performance on the job;

f. Denise Turner Forgum - Plaintiff's performance on the job;

g. Mattie Gibson - Plaintiff's performance on the job;

h. Vennie Carr - Plaintiff's performance on the job; and,

i. Each person named and referred to in Plaintiff's Original Complaint.

2.    The Plaintiff has copies of her payroll stubs from her employer(s) since the

1

termination from the Defendants' employment. She also has copies of the foreclosure documents regarding her home. Further, the Plaintiff has medical records indicating health conditions along with medical bills. Still further, the Plaintiff has copies of her retirement information. These copies will be supplemented by Plaintiff's counsel upon receipt from the Plaintiff.

3. The Plaintiff's counsel will provide a computation of damages claimed upon receipt of copies from the Plaintiff as referred to in Item #2 above.

Respectfully submitted,

Lateefah Muhammad (*Ala. Code* MUH001)
ATTORNEY FOR PLAINTIFF

Lateefah Muhammad, Attorney At Law, P.C.
Post Office Box 1096
Tuskegee, Alabama 36087
(334) 727-1997 telephone and facsimile
lateefahmuhammad@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Initial Disclosures to James C. Pennington, Esquire and Fred Suggs, Jr., Esquire, attorneys for Defendants, by sending it to OGLETREE DEAKINS, P.C., One Federal Place, Suite 1000, 1819 Fifth Avenue North, Birmingham, Alabama 35203, in the United States Mail, postage prepaid, on this 2nd day of March, 2007.

Lateefah Muhammad

2

# Ogletree
# Deakins
ATTORNEYS AT LAW

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

The Ogletree Building
300 North Main Street
Post Office Box 2757
Greenville, South Carolina 29602
Telephone: 864.271.1300
Facsimile:  864.235.4754
www.ogletreedeakins.com

March 13, 2007

Lateefah Muhammad, Esq.
Post Office Box 1096
Tuskegee Institute, Alabama  36087

**Re:     Patricia J. Gibson v. WestPoint Stevens, Inc. and WestPoint Home, Inc.
C. A. No.:  3:06-CV-974-MEF**

Dear Ms. Muhammad:

Enclosed is an authorization for Ms. Gibson's signature allowing Dr. David G. Fagan (Valley Family Physicians), Dr. Ron M. Shiver, Dr. James K. Whatley, and Dr. Enrique Duprat to release any and all records pertaining to the treatment of Ms. Gibson.  Please have Ms. Gibson sign the authorization and return it to us at your earliest convenience.  Should Ms. Gibson fail to authorize the release of the records, we will subpoena the records from these providers. Enclosed are copies of the subpoenas for your review.  In accordance with HIPAA, should we not receive an objection from you within 15 days, or the signed authorizations, the subpoenas will be forwarded to the providers for the records.

Please do not hesitate to contact us with any questions or concerns.

Sincerely,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P. C.

Fred W. Suggs, Jr.

FWS, Jr./smc
Enclosures

Atlanta, GA • Austin, TX • Birmingham, AL • Charleston, SC • Charlotte, NC • Chicago, IL • Columbia, SC • Dallas, TX • Greensboro, NC • Greenville, SC • Houston, TX • Indianapolis, IN
Kansas City, MO • Los Angeles, CA • Miami, FL • Morristown, NJ • Nashville, TN • Phoenix, AZ • Raleigh, NC • St. Thomas, VI • San Antonio, TX • Tampa, FL • Torrance, CA • Washington, DC

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

Patricia J. Gibson,

V.

**SUBPOENA DUCES TECUM
IN A CIVIL CASE**

WestPoint Stevens, Inc. and
WestPoint Home, Inc.,

CASE NUMBER:  3:06-CV-0974-MEF

TO:     RECORD CUSTODIAN:  David G. Fagan, MD, Valley Family Physicians, 14 Medical Park, Valley, AL  36854

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: Any and all records maintained in your custody pertaining to **Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SS# ████████, DOB 11/8/47**, including but not limited to medical records, treatment records, counseling records, narratives, nurse's notes, doctor 's notes, diagnostic reports, x-ray reports, disability records, admission records, commitment records, referrals, work excuses, questionnaires, forms, applications, and any other record of any kind in your possession. We want every piece of paper in your file relating to this patient.

| PLACE | DATE AND TIME |
| --- | --- |
| **Ogletree Deakins Nash Smoak & Stewart, P. C.**<br>**One Federal Place, 1819 5th Avenue North, Suite 1000**<br>**Birmingham, AL  35203-2118** | **On or before Monday, April 16, 2007 at 10:00 a. m.** |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>March 30, 2007 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Fred W. Suggs, Jr. Attorney for Defendant
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Post Office Box 2757, 300 North Main Street
Greenville, SC  29602
(864)271-1300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)    fails to allow reasonable time for compliance;
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

Patricia J. Gibson,

v.

**SUBPOENA DUCES TECUM
IN A CIVIL CASE**

WestPoint Stevens, Inc. and
WestPoint Home, Inc.,

CASE NUMBER:  3:06-CV-0974-MEF

TO:     RECORD CUSTODIAN:  Ron M. Shiver, MD, 2 48th Street, Valley, AL  36854

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

■ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
the place, date, and time specified below: Any and all records maintained in your custody pertaining to **Patricia J.
Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SS#**██████, **DOB 11/8/47,** including but
not limited to medical records, treatment records, counseling records, narratives, nurse's notes, doctor 's notes,
diagnostic reports, x-ray reports, disability records, admission records, commitment records, referrals, work excuses,
questionnaires, forms, applications, and any other record of any kind in your possession. We want every piece of paper
in your file relating to this patient.

| PLACE | DATE AND TIME |
|---|---|
| **Ogletree Deakins Nash Smoak & Stewart, P. C.**<br>**One Federal Place, 1819 5th Avenue North, Suite 1000**<br>**Birmingham, AL  35203-2118** | **On or before Monday, April 16,**<br>**2007 at 10:00 a. m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified
below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or
more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for
each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>March 30, 2007 |
|---|---|

ISSUING OFFICERS NAME, ADDRESS AND PHONE NUMBER
Fred W. Suggs, Jr. Attorney for Defendant
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Post Office Box 2757, 300 North Main Street
Greenville, SC  29602
(864)271-1300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)  fails to allow reasonable time for compliance;
(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that

person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

Patricia J. Gibson,

V.

WestPoint Stevens, Inc. and
WestPoint Home, Inc.,

**SUBPOENA DUCES TECUM
IN A CIVIL CASE**

CASE NUMBER:  3:06-CV-0974-MEF

TO:    RECORD CUSTODIAN:  James K. Whatley, MD, 10 Medical Park, Valley, Alabama  36854

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: Any and all records maintained in your custody pertaining to **Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SS# ⬛⬛⬛⬛⬛⬛⬛, DOB 11/8/47**, including but not limited to medical records, treatment records, counseling records, narratives, nurse's notes, doctor 's notes, diagnostic reports, x-ray reports, disability records, admission records, commitment records, referrals, work excuses, questionnaires, forms, applications, and any other record of any kind in your possession. We want every piece of paper in your file relating to this patient.

| PLACE<br>**Ogletree Deakins Nash Smoak & Stewart, P. C.**<br>**One Federal Place, 1819 5th Avenue North, Suite 1000**<br>**Birmingham, AL  35203-2118** | DATE AND TIME<br>**On or before Monday, April 16,**<br>**2007 at 10:00 a. m.** |
| --- | --- |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>March 30, 2007 |
| --- | --- |

ISSUING OFFICERS NAME, ADDRESS AND PHONE NUMBER
Fred W. Suggs, Jr. Attorney for Defendant
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Post Office Box 2757, 300 North Main Street
Greenville, SC  29602
(864)271-1300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)     fails to allow reasonable time for compliance;
(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that

person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

Patricia J. Gibson,

V.

WestPoint Stevens, Inc. and
WestPoint Home, Inc.,

**SUBPOENA DUCES TECUM
IN A CIVIL CASE**

CASE NUMBER: 3:06-CV-0974-MEF

TO:    RECORD CUSTODIAN: Enrique Duprat, MD, 39 Medical Park, Valley, Alabama 36854

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: Any and all records maintained in your custody pertaining to **Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SS#**████████, **DOB 11/8/47**, including but not limited to medical records, treatment records, counseling records, narratives, nurse's notes, doctor 's notes, diagnostic reports, x-ray reports, disability records, admission records, commitment records, referrals, work excuses, questionnaires, forms, applications, and any other record of any kind in your possession. We want every piece of paper in your file relating to this patient.

| PLACE<br>**Ogletree Deakins Nash Smoak & Stewart, P. C.**<br>**One Federal Place, 1819 5th Avenue North, Suite 1000**<br>**Birmingham, AL 35203-2118** | DATE AND TIME<br>**On or before Monday, April 16,**<br>**2007 at 10:00 a. m.** |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>March 30, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Fred W. Suggs, Jr. Attorney for Defendant
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Post Office Box 2757, 300 North Main Street
Greenville, SC  29602
(864)271-1300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that

person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert opinion or information not describing specific events or occurrences in dispute and resulting from the experts study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## PATIENT AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION TO THIRD PARTIES

### A COPY OF THIS AUTHORIZATION SHALL BE USED AS ORIGINAL

By signing this authorization, I authorize and permit **David G. Fagan, MD, Valley Family Physicians, 14 Medical Park, Valley, Alabama 36854** and designated staff members to use and/or disclose certain protected health information ("PHI") about me to the party or parties listed below.

This authorization permits **David G. Fagan, MD, Valley Family Physicians, 14 Medical Park, Valley, Alabama 36854** to use or disclose to <u>**Ogletree Deakins Nash Smoak & Stewart, P. C., One Federal Place, 1819 5th Avenue North, Suite 1000, Birmingham, Alabama 35203-2118**</u> the PHI described below:

> **Any and all documents, including but not limited to, history and physical reports, session reports, session notes, ER reports, operative notes, discharge summaries, doctors' reports, nurses' notes, lab notes, lab reports for any drug and alcohol test, bills, correspondence, patient questionnaire form, video, digital or audio tape recordings, and any other documents relating to Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner) DOB: 11/8/47, SSN:** ▆▆▆▆▆▆ **WE WANT EVERY DOCUMENT IN YOUR FILE.**

> **This authorization further permits David G. Fagan, MD, Valley Family Physicians, 14 Medical Park, Valley, Alabama 36854 to be deposed and give testimony under oath regarding the treatment and counseling of Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner), DOB: 11/8/47 SSN:** ▆▆▆▆▆▆ **including, but not limited to, opinions, assessment, diagnosis and prognosis.**

The PHI to be disclosed shall be from the time period beginning on January 1, 1967 and ending on January 1, 2009.

This authorization expires **two years from the date of authorization.**

I understand that I have the ability to revoke this authorization by providing the practice with a written revocation unless the practice has already disclosed the PHI relying upon this authorization. Should I desire to revoke this authorization, my revocation must be in writing and be sent to the following address: **David G. Fagan, MD, Valley Family Physicians, 14 Medical Park, Valley, Alabama 36854.**

I understand that the PHI disclosed pursuant to this authorization may no longer be protected by federal privacy law. I further understand that **David G. Fagan, MD, Valley Family Physicians, 14 Medical Park, Valley, Alabama 36854** will not condition my treatment, payment, enrollment in a health plan or eligibility for benefits (if applicable) based on the execution of this authorization and that my participation is voluntary. I understand that I have the ability to inspect or copy my PHI disclosed pursuant to this authorization.

_____          _____
Signature of Patient or Legal Guardian                      Relationship to Patient

___Patricia Jones Barrow_____          _____
Patient's Name                                                             Date
Patient's Date of Birth ____11/8/47_____          Patient's SSN: ▆▆▆▆▆▆

## PATIENT AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION TO THIRD PARTIES

A COPY OF THIS AUTHORIZATION SHALL BE USED AS ORIGINAL

By signing this authorization, I authorize and permit **Ron M. Shiver, MD, 2 48th Street, Valley, Alabama 36854** and designated staff members to use and/or disclose certain protected health information ("PHI") about me to the party or parties listed below.

This authorization permits **Ron M. Shiver, MD, 2 48th Street, Valley, Alabama 36854** to use or disclose to **Ogletree Deakins Nash Smoak & Stewart, P. C., One Federal Place, 1819 5th Avenue North, Suite 1000, Birmingham, Alabama 35203-2118** the PHI described below:

> **Any and all documents, including but not limited to, history and physical reports, session reports, session notes, ER reports, operative notes, discharge summaries, doctors' reports, nurses' notes, lab notes, lab reports for any drug and alcohol test, bills, correspondence, patient questionnaire form, video, digital or audio tape recordings, and any other documents relating to Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner) DOB: 11/8/47, SSN: ▓▓▓▓▓▓▓ WE WANT EVERY DOCUMENT IN YOUR FILE.**

> **This authorization further permits Ron M. Shiver, MD, 2 48th Street, Valley, Alabama 36854 to be deposed and give testimony under oath regarding the treatment and counseling of Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner), DOB: 11/8/47 SSN: ▓▓▓▓▓▓▓, including, but not limited to, opinions, assessment, diagnosis and prognosis.**

The PHI to be disclosed shall be from the time period beginning on January 1, 1967 and ending on January 1, 2009.

This authorization expires **two years from the date of authorization.**

I understand that I have the ability to revoke this authorization by providing the practice with a written revocation unless the practice has already disclosed the PHI relying upon this authorization. Should I desire to revoke this authorization, my revocation must be in writing and be sent to the following address: **Ron M. Shiver, MD, 2 48th Street, Valley, Alabama 36854.**

I understand that the PHI disclosed pursuant to this authorization may no longer be protected by federal privacy law. I further understand that **Ron M. Shiver, MD, 2 48th Street, Valley, Alabama 36854** will not condition my treatment, payment, enrollment in a health plan or eligibility for benefits (if applicable) based on the execution of this authorization and that my participation is voluntary. I understand that I have the ability to inspect or copy my PHI disclosed pursuant to this authorization.

_____        _____
Signature of Patient or Legal Guardian        Relationship to Patient

    Patricia Jones Barrow                  _____
_____
Patient's Name                                  Date
Patient's Date of Birth _____11/8/47_____       Patient's SSN: __▓▓▓▓▓▓__

4714754.1

## PATIENT AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION TO THIRD PARTIES

A COPY OF THIS AUTHORIZATION SHALL BE USED AS ORIGINAL

By signing this authorization, I authorize and permit **James K. Whatley, MD, 10 Medical Park, Valley, Alabama 36854** and designated staff members to use and/or disclose certain protected health information ("PHI") about me to the party or parties listed below.

This authorization permits **James K. Whatley, MD, 10 Medical Park, Valley, Alabama 36854** to use or disclose to **Ogletree Deakins Nash Smoak & Stewart, P. C., One Federal Place, 1819 5th Avenue North, Suite 1000, Birmingham, Alabama 35203-2118** the PHI described below:

> **Any and all documents, including but not limited to, history and physical reports, session reports, session notes, ER reports, operative notes, discharge summaries, doctors' reports, nurses' notes, lab notes, lab reports for any drug and alcohol test, bills, correspondence, patient questionnaire form, video, digital or audio tape recordings, and any other documents relating to Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner) DOB: 11/8/47, SSN:** ▮▮▮▮▮▮▮ **WE WANT EVERY DOCUMENT IN YOUR FILE.**

> **This authorization further permits James K. Whatley, MD, 10 Medical Park, Valley, Alabama 36854 to be deposed and give testimony under oath regarding the treatment and counseling of Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner), DOB: 11/8/47 SSN:** ▮▮▮▮▮▮▮ **, including, but not limited to, opinions, assessment, diagnosis and prognosis.**

The PHI to be disclosed shall be from the time period beginning on January 1, 1967 and ending on January 1, 2009.

This authorization expires **two years from the date of authorization.**

I understand that I have the ability to revoke this authorization by providing the practice with a written revocation unless the practice has already disclosed the PHI relying upon this authorization. Should I desire to revoke this authorization, my revocation must be in writing and be sent to the following address: **James K. Whatley, MD, 10 Medical Park, Valley, Alabama 36854.**

I understand that the PHI disclosed pursuant to this authorization may no longer be protected by federal privacy law. I further understand that **James K. Whatley, MD, 10 Medical Park, Valley, Alabama 36854** will not condition my treatment, payment, enrollment in a health plan or eligibility for benefits (if applicable) based on the execution of this authorization and that my participation is voluntary. I understand that I have the ability to inspect or copy my PHI disclosed pursuant to this authorization.

_____        _____
Signature of Patient or Legal Guardian          Relationship to Patient

  Patricia Jones Barrow                  _____
Patient's Name                                   Date
Patient's Date of Birth _____11/8/47_____        Patient's SSN: ▮▮▮▮▮▮▮▮

## PATIENT AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION TO THIRD PARTIES

A COPY OF THIS AUTHORIZATION SHALL BE USED AS ORIGINAL

By signing this authorization, I authorize and permit **Enrique Duprat, MD, 39 Medical Park, Valley, Alabama 36854** and designated staff members to use and/or disclose certain protected health information ("PHI") about me to the party or parties listed below.

This authorization permits **Enrique Duprat, MD, 39 Medical Park, Valley, Alabama 36854** to use or disclose to **Ogletree Deakins Nash Smoak & Stewart, P. C., One Federal Place, 1819 5ᵗʰ Avenue North, Suite 1000, Birmingham, Alabama 35203-2118** the PHI described below:

   **Any and all documents, including but not limited to, history and physical reports, session reports, session notes, ER reports, operative notes, discharge summaries, doctors' reports, nurses' notes, lab notes, lab reports for any drug and alcohol test, bills, correspondence, patient questionnaire form, video, digital or audio tape recordings, and any other documents relating to Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner) DOB: 11/8/47, SSN:** ▉▉▉▉▉▉▉ **WE WANT EVERY DOCUMENT IN YOUR FILE.**

   **This authorization further permits Enrique Duprat, MD, 39 Medical Park, Valley, Alabama 36854 to be deposed and give testimony under oath regarding the treatment and counseling of Patricia Jones Gibson (a/k/a Patricia Barrow and Patricia Varner), DOB: 11/8/47 SSN:** ▉▉▉▉▉▉ **including, but not limited to, opinions, assessment, diagnosis and prognosis.**

The PHI to be disclosed shall be from the time period beginning on January 1, 1967 and ending on January 1, 2009.

This authorization expires **two years from the date of authorization.**

I understand that I have the ability to revoke this authorization by providing the practice with a written revocation unless the practice has already disclosed the PHI relying upon this authorization. Should I desire to revoke this authorization, my revocation must be in writing and be sent to the following address: **Enrique Duprat, MD, 39 Medical Park, Valley, Alabama 36854.**

I understand that the PHI disclosed pursuant to this authorization may no longer be protected by federal privacy law. I further understand that **Enrique Duprat, MD, 39 Medical Park, Valley, Alabama 36854** will not condition my treatment, payment, enrollment in a health plan or eligibility for benefits (if applicable) based on the execution of this authorization and that my participation is voluntary. I understand that I have the ability to inspect or copy my PHI disclosed pursuant to this authorization.


_____          _____
Signature of Patient or Legal Guardian          Relationship to Patient

   Patricia Jones Barrow_____          _____
Patient's Name                                            Date
Patient's Date of Birth _____11/8/47_____          Patient's SSN: ▉▉▉▉▉▉▉

**Ogletree Deakins**
ATTORNEYS AT LAW

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

The Ogletree Building
300 North Main Street
Post Office Box 2757
Greenville, South Carolina 29602
Telephone: 864.271.1300
Facsimile:  864.235.4754
www.ogletreedeakins.com

March 30, 2007

**RECORD CUSTODIAN**
James K. Whatley, MD
10 Medical Park
Valley, Alabama  36854

Certified Article Number

7160 3901 9849 2509 3402

SENDERS RECORD

Re:    Patricia Gibson v. WestPoint Stevens, Inc. and WestPoint Home, Inc.
C. A. No.:  3:06-CV-0974-MEF

Dear Sir or Madam:

We represent WestPoint Stevens, Inc. and WestPoint Home, Inc., in the above referenced matter.  Enclosed is a subpoena authorizing you to release to us any and all documents in your possession relating to the medical treatment of Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SSN: ▪▪▪▪▪▪▪, DOB: 11/8/47.  As shown in the attached letter, notice was given to Ms. Gibson's attorney, pursuant to HIPAA, by letter dated March 13, 2007, and we have received no objection to the subpoena from Ms. Gibson's attorney as of this date.

We would appreciate your office mailing copies of the requested records to our attention no later than Monday, April 16, 2007.  We ask that you execute the enclosed Affidavit of Record Custodian to authenticate the records you send to us. We will reimburse you for your reasonable copying charges.

With kindest regards, I am

Very truly yours,

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

*Fred W. Suggs, Jr.*

Fred W. Suggs, Jr.

FWS, Jr./smc
Enclosures

cc:    Lateefah Muhammad, Esq.

Atlanta, GA • Austin, TX • Birmingham, AL • Charleston, SC • Charlotte, NC • Chicago, IL • Columbia, SC • Dallas, TX • Greensboro, NC • Greenville, SC • Houston, TX • Indianapolis, IN
Kansas City, MO • Los Angeles, CA • Miami, FL • Morristown, NJ • Nashville, TN • Phoenix, AZ • Raleigh, NC • St. Thomas, VI • San Antonio, TX • Tampa, FL • Torrance, CA • Washington, DC

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

Patricia J. Gibson,

v.

WestPoint Stevens, Inc. and
WestPoint Home, Inc.,

### SUBPOENA DUCES TECUM
### IN A CIVIL CASE

CASE NUMBER:  3:06-CV-0974-MEF

TO:    RECORD CUSTODIAN:  James K. Whatley, MD, 10 Medical Park, Valley, Alabama  36854

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

■  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below: Any and all records maintained in your custody pertaining to **Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner, SS#▓▓▓▓▓▓▓▓DOB 11/8/47**, including but not limited to medical records, treatment records, counseling records, narratives, nurse's notes, doctor 's notes, diagnostic reports, x-ray reports, disability records, admission records, commitment records, referrals, work excuses, questionnaires, forms, applications, and any other record of any kind in your possession. We want every piece of paper in your file relating to this patient.

| PLACE | DATE AND TIME |
|---|---|
| **Ogletree Deakins Nash Smoak & Stewart, P. C.** | **On or before Monday, April 16,** |
| **One Federal Place, 1819 5th Avenue North, Suite 1000** | **2007 at 10:00 a. m.** |
| **Birmingham, AL 35203-2118** |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Fred W. Suggs*    [signature] | March 30, 2007 |

ISSUING OFFICERS NAME, ADDRESS AND PHONE NUMBER
Fred W. Suggs, Jr. Attorney for Defendant
Ogletree, Deakins, Nash, Smoak & Stewart, P. C.
Post Office Box 2757, 300 North Main Street
Greenville, SC  29602
(864)271-1300

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)



OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

The Ogletree Building
300 North Main Street
Post Office Box 2757
Greenville, South Carolina 29602
Telephone: 864.271.1300
Facsimile: 864.235.4754
www.ogletreedeakins.com

March 13, 2007

Lateefah Muhammad, Esq.
Post Office Box 1096
Tuskegee Institute, Alabama 36087

**Re:**    **Patricia J. Gibson v. WestPoint Stevens, Inc. and WestPoint Home, Inc.**
       **C. A. No.: 3:06-CV-974-MEF**

Dear Ms. Muhammad:

Enclosed is an authorization for Ms. Gibson's signature allowing Dr. David G. Fagan (Valley Family Physicians), Dr. Ron M. Shiver, Dr. James K. Whatley, and Dr. Enrique Duprat to release any and all records pertaining to the treatment of Ms. Gibson. Please have Ms. Gibson sign the authorization and return it to us at your earliest convenience. Should Ms. Gibson fail to authorize the release of the records, we will subpoena the records from these providers. Enclosed are copies of the subpoenas for your review. In accordance with HIPAA, should we not receive an objection from you within 15 days, or the signed authorizations, the subpoenas will be forwarded to the providers for the records.

Please do not hesitate to contact us with any questions or concerns.

Sincerely,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P. C.

Fred W. Suggs, Jr.

FWS, Jr./smc
Enclosures

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| Patricia Gibson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  3:06-CV-0974-MEF |
| | ) | |
| WestPoint Stevens, Inc., and | ) | |
| WestPoint Home, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF AUTHENTICITY

COMES NOW _____, (print name) who deposes and states as follows:

1.     I am the record custodian for Dr. James K. Whatley.  In my position, I am charged with keeping and maintaining those documents and records which Dr. Whatley creates or keeps in the ordinary course of business.

2.     Dr. Whatley is a health care provider operating within the State of Alabama.

3.     I have personal knowledge of the following facts.

4.     On or about _____, 2007, Dr. Whatley was served with a Subpoena attached as Exhibit A.

5.     I had the responsibility of collecting and producing documents in response to the subpoena.

6.     In response to the subpoena, I did in fact review the files and records of Dr. Whatley, collected those records related to Patricia J. Gibson, a/k/a Patricia Jones, Patricia Barrow and Patricia Varner that were responsive to the subpoena, and copied the same.

1

7.    I hereby certify that the documents attached hereto are genuine, accurate, and complete copies of the documents copied by me for Dr. Whatley in response to the attached subpoena.

8.    I further certify that the records attached hereto were created by Dr. Whatley, transmitted to or from Dr. Whatley, and that it is in the regularly conducted business activity of Dr. Whatley to keep or store these records for business use.

9.    I certify that as records custodian for Dr. Whatley, I have the official capacity to verify the genuineness of documents produced from the files and records of Dr. Whatley.

Further affiant sayeth naught.


Date:_____         _____

                                    Record Custodian for
                                    Dr. James K. Whatley


### DECLARATION PURSUANT TO 28 U.S.C. 1746

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 2007.



_____

**Record Custodian for Dr. James K. Whatley**

                                                      4750574.1



OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

The Ogletree Building
300 North Main Street
Post Office Box 2757
Greenville, South Carolina 29602
Telephone: 864.271.1300
Facsimile:  864.235.4754
www.ogletreedeakins.com

April 16, 2007

*Via* **E-Mail and U.S. Mail**

Lateefah Muhammad, Esquire
P.O. Box 1096
Tuskegee Institute, AL  36087

    **Re:**   *Patricia J. Gibson v. WestPoint Stevens, Inc. and WestPoint Home, Inc.*
        **Case No.:  3:06-CV-974-MEF**

        *Bobby Lee Sanks v. WestPoint Stevens, Inc. and WestPoint Home, Inc.*
        **Case No.:  3:06-CV-1092-T**

Dear Ms. Muhammad:

    We have re-examined the subpoenas issued regarding your clients and find that they are proper under the circumstances.  If we do not receive prompt responses from those subpoenaed, we will be forced to seek enforcement of the subpoenas.

    Your objections about the scope of the subpoenas goes to the admissibility of any documents that may be produced and not to whether the subpoenas are proper.

    If you will give us proper assurances that the physical and mental conditions of your clients will not be issues at trial, then the subpoenas will not be necessary.

        Sincerely,

        OGLETREE, DEAKINS, NASH,
        SMOAK & STEWART, P.C.

        Fred W. Suggs, Jr.

FWS, Jr./blg
cc:   Enrique Duprat, M.D.
       David G. Fagan, M.D.
       Ron M. Shiver, M.D.
       James K. Whatley, M.D.
       William B. Whatley, M.D.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496                    Page 1 of 9

Case 3:06-cv-00974-MEF-TFM     Document 35-6     Filed 05/24/2007     Page 1 of 9

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 7496**

*2002 U.S. Dist. LEXIS 7496, ***

DALE E. RICHMOND, Plaintiff, vs. UPS SERVICE PARTS LOGISTICS d/b/a UPS LOGISTICS GROUP, Defendant

CAUSE NO. IP01-1412-C-H/G

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2002 U.S. Dist. LEXIS 7496

April 25, 2002, Decided

**DISPOSITION:** **[*1]** Plaintiff's emergency motion to quash non-party subpoenas duces tecum granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant company alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., the Family and Medical Leave Act of 1993, 29 U.S.C.S. § 2601 et seq., and the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq. Upon completion of preliminary discovery, the company served non-party subpoenas duces tecum. The employee moved to quash.

**OVERVIEW:** The company served subpoenas duces tecum on six of the employee's previous employers and temporary employment agencies seeking documents pertaining to the employee in 10 different areas. In support of his motion, the employee argued the requests (1) were irrelevant to his claims, (2) were not reasonably calculated to lead to the discovery of admissible evidence, (3) were overbroad, and (4) lacked specificity. The employee's interrogatory responses revealed that he had a criminal record. The employer was permitted to discover information in order for it to establish the so-called after-acquired evidence defense. Since the employee had to demonstrate that he was substantially limited in the major life activity of working, he must show he was precluded from performing either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The employer was entitled to non-party discovery into the employee's training, skills, and abilities.

**OUTCOME:** The employee's emergency motion to quash non-party subpoenas duces tecum was granted in part and denied in part. It was denied to the extent the company was entitled to discover (1) resumes, (2) applications for employment, (3) all evaluations, reviews, appraisals, reprimands, or any other documents referencing any disciplinary action, and (4) complaints, grievances, lawsuits, and charges filed by the employee.

**CORE TERMS:** discovery, subpoena, non-party, discover, after-acquired, motion to quash, Local Rule, appraisals, reprimands, overbroad, resumes, referencing, duces tecum, discovery of admissible evidence, reasonably calculated to lead, emergency, obtainable, grievances, lawsuits, termination, credibility, disciplinary action, disability benefits, personnel file, interrogatory, documentation, training, skills, employment decision, criminal history

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496    Page 2 of 9

Case 3:06-cv-00974-MEF-TFM    Document 35-6    Filed 05/24/2007    Page 2 of 9

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Discovery > Privileged Matters > General Overview
Civil Procedure > Discovery > Relevance

**HN1** Fed. R. Civ. P. 26 permits discovery into any matter, not privileged, that is relevant to the claim or defense of any party. Discoverable information is not limited to that which would be admissible at trial. Information is relevant for purposes of Rule 26 if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Discovery > Undue Burdens

**HN2** Fed. R. Civ. P. 26(b)(2) empowers district courts to limit the scope of discovery if the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.  More Like This Headnote

Civil Procedure > Discovery > Privileged Matters > General Overview
Civil Procedure > Pretrial Matters > Subpoenas
Evidence > Procedural Considerations > Preliminary Questions > Admissibility of Evidence > General Overview

**HN3** The scope of non-party subpoenas under Fed. R. Civ. P. 45 is as broad as permitted under the discovery rules. If the material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.  More Like This Headnote

Civil Procedure > Discovery > Relevance
Civil Procedure > Discovery > Undue Burdens

**HN4** The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. To meet this burden, the objecting party must specifically detail the reasons why each[request is irrelevant.  More Like This Headnote

Civil Procedure > Pretrial Matters > Conferences > General Overview

**HN5** See U.S. Dist. Ct., S.D. Ind., Indianapolis Div., R. 37.1. *Shepardize:* Restrict By Headnote

Civil Procedure > Discovery > Methods > General Overview
Governments > Courts > Rule Application & Interpretation

**HN6** See U.S. Dist. Ct., S.D. Ind., Indianapolis Div., R. 26.2.

Governments > Courts > Rule Application & Interpretation

**HN7** Failure to comply with the local rules is not merely a harmless technicality, but can be a fatal mistake. However, where a previous error is the result of negligence or other nonculpable conduct, the dispute is better decided on the merits than on procedural grounds.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Wrongful Termination > Defenses > General Overview
Labor & Employment Law > Wrongful Termination > Remedies > Backpay
Labor & Employment Law > Wrongful Termination > Remedies > Frontpay

**HN8** Where an employer discovers after termination that the employee engaged in wrongdoing, generally neither reinstatement nor front pay is an appropriate remedy. The after-acquired evidence doctrine holds that there is no right to back pay if in the

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496                    Page 3 of 9

Case 3:06-cv-00974-MEF-TFM        Document 35-6        Filed 05/24/2007        Page 3 of 9

course of litigation over a discriminatory or otherwise unlawful discharge the employer unearths evidence that, had he known it at the outset, would have caused him, without fault, to refuse to hire the employee. Such after-acquired evidence includes any misrepresentations an employee may have made to previous employers about a criminal record or employment history. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview 🔲

HN9 ⬇ In order for an employee to demonstrate that he is substantially limited in the major life activity of working, he must show he is precluded from performing either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. More Like This Headnote

**COUNSEL:** For Plaintiff: Denise Larue, Haskin Lauter Cohen & Larue, Indianapolis, IN.

**JUDGES:** Tim A. Baker, United States Magistrate Judge, Southern District of Indiana.

**OPINION BY:** Tim A. Baker

**OPINION: ENTRY ON PLAINTIFF'S EMERGENCY MOTION TO QUASH NON-PARTY SUBPOENAS DUCES TECUM**

**I. Background**

Plaintiff Dale E. Richmond filed suit alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq., the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et. seq., and the Employees Retirement and Income Security Act of 1974, 29 U.S.C. § 1001 et. seq. On or about February 21, 2000, Richmond began his employment with Defendant UPS Service Parts Logistics. Richmond worked there until his termination on July 11, 2001.

Upon completion of preliminary discovery, Defendant served non-party subpoenas duces tecum on six of Richmond's previous employers and temporary employment agencies dating back to 1994. The subpoenas requested:

Any and all documents pertaining to Plaintiff **[*2]** which in any way constitute, evidence, contain, discuss or refer to, directly or indirectly:

(1) any and all applications for employment and related documentation;

(2) any and all resumes and/or other records of employment history;

(3) the entire personnel file concerning Plaintiff's employment;

(4) offers of employment;

(5) terms, benefits, and conditions of employment;

(6) employment contracts, if any;

(7) job requirements;

(8) evaluations, reviews, appraisals and/or other communications of any kind, whether formal or informal, relating to the job performance, conduct, and/or

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496          Page 4 of 9

Case 3:06-cv-00974-MEF-TFM     Document 35-6     Filed 05/24/2007     Page 4 of 9

behavior of Plaintiff;

(9) formal and/or informal warnings to, reprimands of, and/or discipline regarding Plaintiff; and

(10) salary, wages, earnings, compensation, commissions, bonuses, benefits of any kind, and/or any other form of income or renumeration provided or due Plaintiff.

[Pl.'s Br., p. 3].

Richmond objects to these requests, claiming they are irrelevant to his claims, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, and lack specificity. [Pl.'s Br., pp. 3-4]. In addition, Richmond notes that much of **[*3]** the information sought in the subpoenas is readily obtainable through the authorizations for the release of his medical records and tax returns. Id. at 2. Defendant responds that the information sought is directly relevant to the claims and defenses presented in this case, and that little (if any) of the information sought is confidential. [Def.'s Br., p. 2].

Before the Court is Richmond's emergency motion to quash non-party subpoenas duces tecum served on his previous employers and employment agencies. For the reasons set forth below, Richmond's emergency motion to quash non-party subpoenas duces tecum is GRANTED IN PART and DENIED IN PART.

## II. Discussion

## A. Standard on Motion to Quash

*HN1* Federal Rule of Civil Procedure 26 permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Sykes v. Target Stores, 2002 U.S. Dist. LEXIS 6627, 2002 WL 554505, *1 (N.D. Ill. Apr. 15, 2002), quoting Fed. R. Civ. P. 26 (b)(1). n1 Discoverable information is not limited to that which would be admissible at trial. Id. Information is relevant for purposes of Rule 26 "if the discovery appears reasonably calculated to lead to the discovery **[*4]** of admissible evidence." Fed. R. Civ. P. 26(b)(1).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Richmond's motion to quash cites to the discovery standard in Rule 26 as it was written prior to its most recent amendment in 2000. Prior to that amendment, Rule 26 provided for the discovery of non-privileged information "relevant to the subject matter involved in the pending action."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The implementation of amended Rule 26 did not necessarily impact the so called "liberal discovery" standard as evidenced by cases interpreting the post-amendment rule. See, e.g., Hooker v. Norfolk Southern Ry. Co., 204 F.R.D. 124, 126 (S.D. Ind. 2001) (referencing a "liberal discovery standard"); White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 366 (N.D. Ill. 2001) ("Liberal discovery is permitted in federal courts to encourage full disclosure before trial."); Anderson v. Hale, 202 F.R.D. 548, 2001 WL 503045, *3 (N.D. Ill. 2001) ("Information is generally discoverable under the Federal Rules of Civil Procedure. The

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496          Page 5 of 9

Case 3:06-cv-00974-MEF-TFM     Document 35-6     Filed 05/24/2007     Page 5 of 9

minimal showings of relevance **[\*5]** and admissibility hardly pose much of an obstacle for an inquiring party to overcome, even considering the recent amendment to Rule 26 (b)(1).").

Nonetheless, *HN2*⬆Rule 26(b)(2) "empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. Feb. 26, 2002), quoting Fed. R. Civ. P. 26 (b)(2). See also Cook, Inc. v. Boston Scientific Corp., 2002 U.S. Dist. LEXIS 4334, 2002 WL 406977, \*1 (N.D. Ill. Mar. 15, 2002), citing Fed. R. Civ. P. 26(b)(2) ("Discovery may be limited if the Court determines it is unreasonably cumulative or duplicative, or if the burden or expense of the proposed discovery outweighs its likely benefit.") (internal quotations omitted).

*HN3*⬆The scope of non-party subpoenas under Rule 45 is as broad as permitted under the discovery rules. See Jackson v. Brinker, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993) ("the scope of material obtained by a Rule 45 subpoena is as broad as permitted under the discovery rules. . . if the material **[\*6]** is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.") (internal citations omitted); Fed. R. Civ. P. 45 advisory committee note to the 1991 amendment. *HN4*⬆The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 543 (N.D. Ind. 1991). To meet this burden, the objecting party must "specifically detail the reasons why each [request] is irrelevant...." Schaap v. Executive Indus., Inc., 130 F.R.D. 384, 387 (N.D. Ill. 1990).

## B. Compliance with Local Rules

*HN5*⬆Local Rule 37.1, entitled "Informal Conference to Settle Discovery Disputes," provides:

> The Court may deny any discovery motion (except those motions brought by a person appearing pro se and those brought pursuant to Rule 26 (c), Federal Rules of Civil Procedure, by a person who is not a party), unless counsel for the moving party files with the Court, at the time of filing the motion, a separate statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing **[\*7]** attorney(s) on the matter(s) set forth in the motion.

> The statement shall recite, in addition, the date, time, and place of such conference and the names of all parties participating therein. If counsel for any party advises the Court in writing that opposing counsel has refused or delayed meeting and discussing the problems covered in this rule, the Court may take such action as is appropriate to avoid unreasonable delay.

In addition, *HN6*⬆Local Rule 26.2, entitled "Filing of Discovery Materials," in subsection (b) states in pertinent part:

> If disclosures, interrogatories, *requests*, answers, responses or depositions are to be used at trial or are necessary to a pretrial motion which might result in a final order on any issue, the portions to be used shall be filed with the Clerk at the onset of the trial or at the filing of the motion insofar as their use can be reasonably anticipated.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496          Page 6 of 9

Case 3:06-cv-00974-MEF-TFM     Document 35-6     Filed 05/24/2007     Page 6 of 9

See Long v. Anderson University, 204 F.R.D. 129, 133 (S.D. Ind. 2001).

In this case, although Defendant did not move to strike Richmond's brief, Defendant correctly notes that Richmond did not submit to the Court a statement showing his compliance with Local **[*8]** Rule 37.1. In addition, neither party attached as exhibits the non-party subpoenas giving rise to this motion, as contemplated by Local Rule 26.2's reference to "requests." *HN7* "Failure to comply with the local rules is not merely a 'harmless technicality,' but can be a 'fatal' mistake." Servin v. GATX Logistics, Inc., 187 F.R.D. 561, 563 (N.D. Ill. 1999), quoting Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994). However, "where a previous error is the result of negligence or other nonculpable conduct . . . the dispute is better decided on the merits than on procedural grounds." Fisher v. National Railroad Passenger Corporation, 152 F.R.D. 145, 149 (S.D. Ind. 1993) (Tinder, J.).

The substance of the subpoenas is not in dispute. Therefore, while attaching them to the briefs would have been helpful to the Court and in compliance with Local Rule 26.2, this shortcoming will not in this instance prevent or delay a ruling on the merits. Likewise, given the asserted "emergency" status of Richmond's motion, the Court will not in this instance require strict compliance with Local Rule 37.1. Accordingly, the Court will consider **[*9]** Defendant's motion to compel on its merits.

## C. Merits of the Subpoenas

In its response brief, Defendant identifies five reasons why it is entitled to documents contained in the employment files of Richmond's previous employers. Each is addressed below.

## 1. Documents to prove After-Acquired Evidence Defense

Richmond's interrogatory responses reveal that Richmond has a criminal record consisting of both felony and misdemeanor convictions. [Def.'s Ex. B]. Defendant seeks to discover this information to establish the so-called after-acquired evidence defense discussed in McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 360, 130 L. Ed. 2d 852, 115 S. Ct. 879 (1995). In McKennon, the Supreme Court concluded that *HN8* where an employer discovers after termination that the employee engaged in wrongdoing, generally "neither reinstatement nor front pay is an appropriate remedy." See also Graham v. Casey's General Stores, 206 F.R.D. 251, 2002 WL 416949, *4, F.R.D. , (S.D. Ind. Mar. 18, 2002), quoting Hartman Bros. Heating & Air Conditioning, Inc. v. N.L.R.B., 280 F.3d 1110, 1115-16 (7th Cir. Feb. 5, 2002) ("after-acquired **[*10]** evidence doctrine holds that there is no right to back pay if in the course of litigation over a discriminatory or otherwise unlawful discharge the employer unearths evidence that, had he known it at the outset, would have caused him, without fault, to refuse to hire the employee") (internal quotations omitted). Such after-acquired evidence includes any misrepresentations Richmond may have made to previous employers about his criminal record or his employment history. See, e.g., O'Neill v. Runyon, 898 F. Supp. 777, 781 (D. Colo. 1995) (in determining whether after-acquired evidence doctrine barred relief in employment discrimination case, the question was whether, when employee filled out employment application, he lied about having no criminal convictions and thus, employee's belief about prior criminal proceedings was relevant); Charles v. Cotter, 867 F. Supp. 648, 658 (N.D. Ill. 1994) (evidence that plaintiff lied about his criminal history on employment applications and was terminated as a result thereof was admissible). If in fact Richmond was untruthful about his criminal convictions to his employers, this information may be used to attack his **[*11]** credibility. See Graham, 206 F.R.D. 25, 2002 WL 416949 at *4.

Therefore, Defendant is entitled to discover all employment applications or resumes

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496    Page 7 of 9

Case 3:06-cv-00974-MEF-TFM    Document 35-6    Filed 05/24/2007    Page 7 of 9

Richmond provided to previous employers. In addition, Defendant may discover all evaluations, reviews, appraisals, reprimands, or other documents referencing any disciplinary action. Defendant is entitled to this information to determine whether Richmond was untruthful about: (1) his criminal history; (2) his qualifications; or (3) prior discipline, all of which are relevant to Richmond's credibility. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Defendant states it is entitled to the same documents addressed in this section because of Richmond's retaliation claim. [Def.'s Br., p. 5]. However, the Court declines to address this issue since these documents are ordered to be produced.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## 2. Documents relating to Richmond's skills/training/ability

HN9 In order for Richmond to demonstrate that he is substantially limited in the major life activity of working, he must show he is precluded from performing **[*12]** either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. See, e.g., Stein v. Ashcroft, 284 F.3d 721, 725 (Mar. 21, 2002), quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999) (a plaintiff must show, "at a minimum," that she is "unable to work in a broad class of jobs."). See also 29 C.F.R. § 1630.2(j)(3)(I) ("the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). As a result, Defendant states it is entitled to non-party discovery into Richmond's "training, skills, and abilities" by obtaining from his previous employers his job applications, resumes and employment history, personnel file, employment contracts, documentation of job requirements, evaluations, reviews, appraisals, reprimands, and discipline. [Def.'s Br., p. 5].

The Court concluded in Section II C-1 that Defendant is entitled to Richmond's employment applications, resumes, and all evaluations, reviews, appraisals, reprimands, or other **[*13]** documents referencing any disciplinary action to establish the after-acquired evidence defense. However, Defendant's requests to obtain Richmond's entire personnel file, on its face, is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. See, e.g., Thomas v. City of Durham, N.C., 1999 U.S. Dist. LEXIS 5361, 1999 WL 203453, *2 (M.D.N.C. 1999) ("The Court agrees that a request for the entire personnel files of the employees is, on its face, an overbroad request."); Franzon v. Massena Memorial Hosp.,189 F.R.D. 220, 222 (N.D.N.Y. 1999) (finding request overbroad where it seeks "'any and all documents' and provides no meaningful limitations."). The request to obtain any employment contracts Richmond may have entered into is likewise overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Finally, Defendant is not entitled to documentation of "job requirements" because the determination of whether one is a qualified individual with a disability is determined at the time the employment decision was made. See Bay v. Cassens Transport Company, 212 F.3d 969, 974 (7th Cir. 2000).

## 3. Information relating **[*14]** to income from Social Security Disability benefits

Richmond's interrogatory responses reflect that he received Social Security disability benefits from approximately February 1996 to August 2000. [Def.'s Ex. C]. Defendant seeks information relating to these benefits. Richmond resists, and his motion to quash is proper in this respect for two reasons. First, this information is readily obtainable through the lesser-intrusive means of serving non-party subpoena to the Social Security Administration (SSA) or

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496                    Page 8 of 9

Case 3:06-cv-00974-MEF-TFM     Document 35-6     Filed 05/24/2007     Page 8 of 9

by reviewing information obtained from the release Richmond signed for Defendant to obtain his tax returns. Second, this information is completely irrelevant to any defense of this case. For instance, as addressed above, the determination of whether Richmond is disabled is made at the time the adverse employment decision was made. As to the impact on Richmond's claim for damages, any Social Security disability benefits he received prior to his termination are irrelevant to his claim for damages. However, if Richmond has received Social Security disability benefits during or subsequent to his employment at Defendant, this information can be discovered through either his tax returns **[*15]** or a subpoena to the SSA.

### 4. Documents relating to previously filed complaints, grievances, lawsuits, or charges

Defendant also seeks to discover whether Richmond filed any complaints, grievances, lawsuits, or charges with his former employers. As this Court has previously noted, "it is conceivable that Defendant could discover [plaintiff] filed previous frivolous claims that may go to her credibility and may be so compelling as to warrant their use at trial." Graham v. Casey's General Stores, 206 F.R.D. 251, 2002 WL 416949 at *5.

Graham is dispositive of this issue. Defendant is entitled to discover complaints, grievances, lawsuits, and charges filed by Richmond during his previous employment.

### III. Conclusion

For the reasons set forth above, Richmond's emergency motion to quash non-party subpoenas duces tecum is GRANTED IN PART and DENIED IN PART. Richmond's motion is denied to the extent that Defendant is entitled to discover the following documents through its non-party subpoenas:

> 1. resumes;

> 2. applications for employment;

> 3. all evaluations, reviews, appraisals, reprimands, or any other documents referencing any disciplinary action; **[*16]** and

> 4. complaints, grievances, lawsuits, and charges filed by Richmond.


Richmond's motion is granted in all other respects.

Pursuant to Rule 26 (c), the parties are encouraged to enter into a mutually agreeable protective order to govern the conduct of any further discovery.

So ordered.

DATED this 25th day of April, 2002.

Tim A. Baker

United States Magistrate Judge

Southern District of Indiana

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 7496          Page 9 of 9

Case 3:06-cv-00974-MEF-TFM     Document 35-6     Filed 05/24/2007     Page 9 of 9

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 7496**
View: Full
Date/Time: Thursday, May 24, 2007 - 2:39 PM EDT

\* Signal Legend:

🔴  -  Warning: Negative treatment is indicated

🟨 Q  -  Questioned: Validity questioned by citing refs

⚠️  -  Caution: Possible negative treatment

✚  -  Positive treatment is indicated

🅐  -  Citing Refs. With Analysis Available

ⓘ  -  Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**

About LexisNexis  | Terms & Conditions
Copyright ©  2007 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255                    Page 1 of 22

Case 3:06-cv-00974-MEF-TFM    Document 35-7    Filed 05/24/2007    Page 1 of 22

Service: **Get by LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 15255**

*1996 U.S. Dist. LEXIS 15255, ***

ELM ENERGY AND RECYCLING (U.K.) LIMITED, a private limited liability company organized and existing under the laws of the United Kingdom, and NIPSCO DEVELOPMENT COMPANY, INC., an Indiana corporation, and BLACK & VEATCH, a partnership, Plaintiffs, v. JOHN BASIC, SR., JOHN BASIC, JR., or RECORDS CUSTODIAN of BASIC ENVIROTECH, INC. AND FLAME ENGINEERING, INC. f/k/a BASIC ENVIRONMENTAL ENGINEERING, INC., Defendants.

Case No. 96 C 1220

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1996 U.S. Dist. LEXIS 15255

October 8, 1996, Decided
October 9, 1996, DOCKETED

**DISPOSITION:  [*1]**  Motion to compel granted in part and denied in part; motion to quash denied; motion to modify granted in part and denied in part; B&V's motion for attorneys' fees denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff subpoena servers, who were pursuing litigation in another jurisdiction, filed a motion to compel discovery against defendant subpoena recipients, who were served subpoenas in that litigation, with the court supervising discovery. The subpoena recipients cross-moved to quash or modify the subpoenas, sought a protective order limiting the use of the requested documents to the underlying action, and sought attorneys' fees.

**OVERVIEW:** The subpoena servers were plaintiffs in litigation in another federal district court involving a contract dispute over the design of a whole tires-to-energy waste incineration plant in a foreign country. The subpoena servers requested certain information pursuant to Fed. R. Civ. P. 45 from the subpoena recipients, who were involved in the design of the plant, in the underlying litigation, but the production of documents was denied. The magistrate held that the subpoena servers were entitled to receive the information because the subpoena recipients failed to show that the subpoenas should be quashed. For instance, the underlying suit was not a sham to get discovery in another suit pending in a foreign country over the plant. However, the subpoenas were modified and a protective order was entered to protect the widespread use of confidential information gained in the document production process.

**OUTCOME:** The magistrate granted the motion to compel in part and denied it in part, denied the motion to quash the subpoenas, granted the motion to modify in part and denied it in part, and entered a protective order limiting the disclosure of certain confidential information. The magistrate refused to make an award of attorneys' fees to the subpoena recipients.

**CORE TERMS:** incinerator, discovery, subpoena, protective order, plant, technology, confidential, pending action, correspondence, good cause, modified, trade secrets, counterclaim, capability, documents requested, yoke, beam, negligent misrepresentation,

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 2 of 22

Case 3:06-cv-00974-MEF-TFM      Document 35-7      Filed 05/24/2007      Page 2 of 22

subcontractor, combustion, subpoenaed, producing, motion to compel, disclosure, designated, modification, dissemination, motion to quash, undue burden, relevance

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Pretrial Matters > Subpoenas
*HN1* Fed. R. Civ. P. 45(c)(2)(B) allows a subpoenaed party to object to the inspection and copying of documents within 14 days after service.  More Like This Headnote

Civil Procedure > Pretrial Matters > Subpoenas
Criminal Law & Procedure > Discovery & Inspection > Subpoenas
*HN2* According to the Fed. R. Civ. P. 45(c)(2)(B), after objections are made, a party serving a subpoena may move for an order to compel production of documents at any time. In order to quash or modify a subpoena duces tecum under the Fed. R. Civ. P., a moving party must demonstrate that the subpoena subjects them to an undue burden, Fed. R. Civ. P. 45(c)(3)(A)(iv); or that the subpoena requires disclosure of trade secrets, confidential research, development or commercial information. Fed. R. Civ. P. 45(c)(3)(B)(i). The party moving to quash a subpoena bears the burden of proving that the subpoena is unreasonable or oppressive.  More Like This Headnote

Civil Procedure > Discovery > Methods > Foreign Discovery
Civil Procedure > Pretrial Matters > Subpoenas
Criminal Law & Procedure > Discovery & Inspection > Discovery Misconduct
*HN3* For a court to disallow subpoenas on the grounds that they are a disguised attempt to conduct discovery for pending foreign litigation, a party moving to quash the subpoenas would have to conclusively demonstrate that the discovery for the lawsuit in which the subpoenas were issued is a sham. Although the Fed. R. Civ. P. allow for broad discovery, they do not sanction the use of discovery in one case as a sham for conducting discovery solely for a different case or to circumvent limitations on discovery in a different action.  More Like This Headnote

Civil Procedure > Discovery > Methods > Foreign Discovery
Civil Procedure > Pretrial Matters > Subpoenas
*HN4* The fact that the parties to a separate action in a foreign country would be interested in the discovery that the parties to an action may obtain does not necessarily lead to the conclusion that the parties should be precluded from getting discovery. Unless it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum, federal courts do allow full use of the information in other forums.  More Like This Headnote

Civil Procedure > Discovery > Methods > Foreign Discovery
Civil Procedure > Discovery > Methods > Requests for Production & Inspection
International Law > Dispute Resolution > Evidence > Assistance
*HN5* See 28 U.S.C.S. § 1782.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
Civil Procedure > Discovery > Methods > Foreign Discovery
International Law > Dispute Resolution > Evidence > Assistance
*HN6* A plain reading of 28 U.S.C.S. § 1782 does not require a district court to explore whether the discovery is allowed in the foreign forum.  More Like This Headnote

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255     Page 3 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 3 of 22

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Discovery > Privileged Matters > General Overview
Criminal Law & Procedure > Discovery & Inspection > Subpoenas

**HN7** In general, the Fed. R. Civ. P. allow for broad discovery in order that the parties may gain full knowledge of the issues of the case. More specifically, Fed. R. Civ. P. 26(b)(1) allows discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Thus, the principle requirement for a subpoena duces tecum is that it be relevant to the subject of the pending case. More Like This Headnote

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Discovery > Relevance
Evidence > Relevance > Relevant Evidence

**HN8** Fed. R. Evid. 401 states that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. In general, relevancy for discovery purposes should be liberally construed. Relevance should be measured by the general relevance to the subject matter and the legal issues present in the case rather than the precise issues presented by the pleadings. If there is a possibility that the discovery sought may lead to information relevant to the subject matter of the action, then the discovery should generally be allowed. Fed. R. Civ. P. 26(b)(1). More Like This Headnote

Civil Procedure > Discovery > Relevance
Civil Procedure > Pretrial Matters > Subpoenas

**HN9** In deciding whether to quash or modify subpoenas or to compel answers to them, a court must balance the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena. More Like This Headnote

Civil Procedure > Discovery > Relevance

**HN10** A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. If relevance is unclear, Fed. R. Civ. P. 26(b)(1) indicates that the court should be permissive. More Like This Headnote

Civil Procedure > Discovery > Relevance
Evidence > Procedural Considerations > Preliminary Questions > Admissibility of Evidence > General Overview

**HN11** Once facts are admitted they are not in dispute and no evidence is needed to prove them. More Like This Headnote

Environmental Law > Hazardous Wastes & Toxic Substances > Asbestos > General Overview
Torts > Procedure > Multiple Defendants > Distinct & Divisible Harms

**HN12** Under Michigan law, a defendant has the right to introduce evidence that a plaintiff's damages are due to a third party's negligence even if the other allegedly negligent party is not a party to the action. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment > Employers
Torts > Negligence > Duty > General Overview

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255    Page 4 of 22

Case 3:06-cv-00974-MEF-TFM    Document 35-7    Filed 05/24/2007    Page 4 of 22

*HN13* An owner has a duty to a contractor when the owner takes responsibility for approving the materials to be used by the contractor. More Like This Headnote

Civil Procedure > Discovery > Methods > Requests for Production & Inspection
Civil Procedure > Pretrial Matters > Subpoenas

*HN14* When a court is confronted with a motion to quash a subpoena, its duty is not to deny any discovery, but to reduce the demand to what is reasonable, considering the parties' needs and problems. Thus, the court must consider each subpoena request and determine what is reasonable. More Like This Headnote

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Discovery > Protective Orders

*HN15* Generally, the parties to an action may use information obtained through discovery as they wish. As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings. However, Fed. R. Civ. P. 26(c) allows a district court to issue protective orders for discovery materials when good cause is shown. More Like This Headnote

Civil Procedure > Discovery > Protective Orders
Trade Secrets Law > Civil Actions > Discovery
Trade Secrets Law > Civil Actions > Protection Orders

*HN16* Fed. R. Civ. P. 26(c) provides in part that upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including that the discovery not be had or that a trade secret or other confidential research development, or commercial information not be disclosed or be disclosed only in a designated way. The party seeking the protective order has the burden of demonstrating that good cause exists for the granting of that order. Broad allegations of harm without specific examples or clear reasoning do not constitute good cause under the Rule 26(c) test. The court's understanding of the background facts along with the court's common sense should be a guide as to whether good cause has been established. A non-party may show good cause more easily than a party. One way of showing good cause is by demonstrating that a discovery request seeks trade secrets. More Like This Headnote

Civil Procedure > Discovery > Protective Orders

*HN17* Using discovered information from one lawsuit in connection with another litigation comes squarely within the purposes of the Fed. R. Civ. P. and does not demonstrate good cause for a protective order with a provision not to disseminate. More Like This Headnote

Civil Procedure > Discovery > Methods > Foreign Discovery
Civil Procedure > Discovery > Protective Orders

*HN18* The general risk of collaborative sharing of information does not constitute good cause for a protective order under Fed. R. Civ. P. 26(c). More Like This Headnote

Civil Procedure > Discovery > Protective Orders

*HN19* If there is no evidence of bad faith by a discovering party, federal courts allow the use of discovered information in other forums. More Like This Headnote

Civil Procedure > Discovery > Misconduct

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 5 of 22

Case 3:06-cv-00974-MEF-TFM    Document 35-7    Filed 05/24/2007    Page 5 of 22

HN20 Under Fed. R. Civ. P. 37(a)(4)(C), a court may apportion the reasonable expenses incurred in relation to a motion among the parties and persons in a just manner.  More Like This Headnote

**COUNSEL:** For ELM ENERGY AND RECYCLING (U.K.) LIMITED, a private limited liability company organized and existing under the laws of the United Kingdom, plaintiff: Paul M. Lurie, Joseph J. Krasovec, III, Daniel Scott Brennan, Schiff, Hardin & Waite, Chicago, IL.

For NIPSCO DEVELOPMENT COMPANY, INC., an Indiana corporation, plaintiff: Paul M. Lurie, (See above). Joseph J. Krasovec, III, (See above). Daniel Scott Brennan, (See above).

For BLACK & VEATCH, a partnership, plaintiff: Donald F. Martin, James M. Warden, Timothy W. Triplett, Blackwell, Sanders, Matheny, Weary & Lombardi, L.C., Overland Park, KS.

For JOHN BASIC, SR, defendant: Brian Adam Bosch, Garfield & Merel, Ltd., Chicago, IL. Timothy Frank Kocian, Katz, Randall & Weinberg, Chicago, IL.

For JOHN BASIC, JR, defendant: Brian Adam Bosch, (See above). Timothy Frank Kocian, (See above).

For FLAME ENGINEERING, INC fka Basic Environmental Engineering, Inc., defendant: Brian Adam Bosch, (See above). Timothy Frank Kocian, (See above).

**JUDGES:** RONALD **[*2]** A GUZMAN, United States Magistrate Judge. Judge Marovich

**OPINION BY:** RONALD A GUZMAN

**OPINION: MEMORANDUM OPINION AND ORDER**

Pending is Elm Energy and Recycling (UK) Ltd., NIPSCO Development Company, Inc.'s ("Elm/NIPSCO") and Black & Veatch's ("B&V") motion to compel discovery responses from non-party John Basic Sr. of Basic Envirotech, Inc. ("Envirotech") and Flame Engineering, Inc. f/k/a Basic Environmental Engineering Inc. ("Basic/Flame"). B&V has also requested that costs pursuant to Fed.R.Civ.Pro.37(a)(4) be granted. In response to this motion Basic/Flame and Envirotech cross-move to quash the subpoenas. In the alternative Basic Flame requests that the subpoenas be modified. In addition, Basic/Flame seeks a protective order limiting the use of the requested documents to the pending action. For the reasons set forth below, this motion to compel is granted in part and denied in part; the motion to quash is denied; the motion to modify is granted in part and denied in part; and the protective order set forth below is to be entered by agreement of the parties. Finally, B&V's motion for attorneys' fees is denied.

**BACKGROUND FACTS**

**UK LITIGATION**

This litigation arises out **[*3]** of a project for the design and construction of a whole tires-to-energy waste incineration plant in Wolverhampton, UK. The plant was constructed pursuant to a contract between Elm Energy and Recycling (UK) Ltd. ("Elm"), a United Kingdom company, and TBV Power Ltd. ("TBV"), an English limited liability company. NIPSCO Development Company, Inc., an Indiana corporation, owns 95% of Elm. Black & Veatch, a partnership with its principal place of business in Kansas City, Missouri is a 50% shareholder in TBV. Tarmac Construction Ltd., the general contractor of the Elm project, is the other 50% shareholder in TBV.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 6 of 22

Case 3:06-cv-00974-MEF-TFM          Document 35-7          Filed 05/24/2007          Page 6 of 22

There are two suits pending which involve the Elm plant, one in Michigan and one in the United Kingdom. Elm/NIPSCO are the plaintiffs and B&V the defendant in the litigation in Michigan for which they are here seeking discovery from nonparties Basic/Flame and Envirotech. Basic/Flame and Envirotech are based in Glen Ellyn, Illinois. Basic/Flame and Envirotech are suppliers of waste to energy systems based on the patented Basic Pulse Hearth TM technology invented by John Basic, Sr. Basic/Flame designed the incinerators for the Elm plant. NIPSCO and B&V are not parties to the UK dispute. **[*4]**

In the UK, the plaintiffs are TBV and Tarmac PLC and the defendants are Elm, the Environmental Incineration Company Ltd. f/k/a Basic Energy (UK) Limited ("Basic UK") and Basic UK's parent company Blue Circle Industries PLC. Basic UK is the subcontractor that provided the Basic incinerators for the project. Because the plant failed to meet availability and reliability levels called for by the contract, the project's engineer did not issue an Acceptance and Completion Certificate for the facility by June 30, 1995, as required by the Elm/TBV contract. As a result, Elm claims that it exercised its right under the contract to reject the facility constructed by TBV and demand that TBV pay Elm the equivalent in English pounds of $ 47,353,952. (Defendants' Response, Exh "D", p.4-5) In the English litigation, Elm is pursuing claims against TBV and Tarmac, and TBV is disputing Elm's rejection of TBV's work at the plant. TBV, B&V's affiliate, is also pursuing adverse claims against Basic UK, licensee of Basic/Flame and supplier of the Basic incinerators. TBV claims that there was no basis for the performance guarantees given by Basic UK regarding the combustion efficiency of the incinerators, **[*5]** thereby rendering those guarantees fraudulent and allowing TBV to avoid damage limitations in its contract with Basic UK.

## THE MICHIGAN ACTION

On August 5, 1995, plaintiffs Elm/NIPSCO filed suit against defendant B&V in the U.S. District Court for the Eastern District of Michigan. Elm/NIPSCO allege that NIPSCO's decision to invest in Elm was largely based on B&V's assurances that it would provide the necessary expertise for the design, construction and testing of the Elm plant. They also allege that B&V participated extensively in the design of the Elm plant (Defendants' Response, Exh. "D", para. 3) and in Basic's original design of the incinerators (Defendants' Response, Exh. "D" para 32). They assert that the Elm plant has failed to achieve the minimum level of availability and reliability called for by the Elm/TBV contract (Elm/NIPSCO Complaint, 4).

Count I of Elm/NIPSCO's complaint against B&V is for negligent misrepresentation based on representations by P.J. Adam, Chairman of B&V, that the plant was basically sound and that the Elm plant was capable of producing higher steam generation and lower carbon residue than had yet been achieved. Elm/NIPSCO claims that the representations **[*6]** made by Adam were largely based on the performance of the Basic incinerators. Elm/NIPSCO's Response to Defendants' Motion, p.4). Elm/NIPSCO allege that Adam's statements led them to waive certain rights in the Deed of Variation and the Supplemental Deed of Variation that they had had under the original Elm-TBV contract and to make various concessions to TBV. Elm/NIPSCO allege that by entering into the Variation and Supplemental Deed of Variation, they may have lost the right to recover certain liquidated damages from TBV. NIPSCO further alleges, in reliance on Adam's statements, it decided to increase its investment in the Elm plant. Elm claims that Adam's statements were negligent because of the failure of B&V personnel to use reasonable care in their investigation and evaluation of the Elm project. (Count I of Elm/NIPSCO's Complaint, Defendants' Response, Exh. "D").

Counts II and III of Elm/NIPSCO's complaint do not involve any discovery from Basic/Flame. Count IV of Elm/NIPSCO's complaint is for negligence regarding B&V's alleged review, approval and participation in Basic's design of the five incinerators for the Elm plant. (Defendants' Response, Exh. "D," para.32)

On September **[*7]** 18, 1995, the defendant B&V answered Elm/NIPSCO's complaint with

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255    Page 7 of 22

Case 3:06-cv-00974-MEF-TFM    Document 35-7    Filed 05/24/2007    Page 7 of 22

various affirmative defenses. In its answer, B&V denies that it reviewed, approved or participated in Basic's design of the incinerators. Rather, B&V alleges that plaintiffs and their representatives themselves reviewed and approved Basic's design. (Defendants' Response, Exh. "E," p. 11). B&V's affirmative defenses include the claim that there was negligence and fault on the part of the plaintiffs and on the part of Basic which contributed to and caused the plaintiffs' damages, if any. (Defendants' Response, Exh. "E," p.12,13). B&V alleges that Basic admitted errors in the design drawings in 1993 and 1994. They further contend that Basic had a close relationship with Elm/NIPSCO. (B&V's Response to Basic/Flame's Suggestions, p. 5). They assert that Basic was involved in the re-design of the incinerators after the January 5, 1994 meeting.(6).(B&V's Response, Exh. "D"). B&V also claims that Elm/NIPSCO is estopped from bringing this action because of their selection of Basic as the subcontractor and their selection of the Basic incinerators and technology. (Defendants' Response, Exh. "E," p. 14-15).

B&V asserts counterclaims **[*8]** against Elm/NIPSCO for negligent misrepresentation, breach of implied warranty and negligent selection, designation and nomination of Basic as subcontractor and Basic technology. (Motion to Compel, p. 2-3). B&V claims that Elm is liable to B&V for having selected Basic UK as a subcontractor and for selecting the Basic technology and the Model 7000B incinerator in the Elm plant. (Defendants' Response, p. 8).

In Count I, B&V claims that Elm/NIPSCO, by their selection of Basic as the subcontractor and their selection of the Basic technology which constitutes the central feature of the Elm plant, impliedly warranted to TBV and its subcontractors that the technology would be fit for its intended purpose. B&V further alleges that Elm/NIPSCO breached their implied warranty to B&V because the Basic Model 7000B Units failed to achieve an annual capacity factor of at least 80.65% as required by the contract between Elm and TBV and that B&V has sustained damages as a result of that breach. (Defendants' Response, Exh. "E", 17). They allege in Count II of their counterclaim that plaintiffs knew or should have known that the Basic Model 7000B Units were not capable of achieving the capacity required **[*9]** by the March 2, 1992 contract. (Exh. "E," p. 19). They further claim that Elm owed a duty to its contractors and subcontractors to exercise reasonable care in investigating and selecting Basic, and as a result of Elm/NIPSCO's negligence, B&V has been damaged in the amount of at least $ 50 million. (Exh. "E," p. 20).

Count III of the counterclaim is for negligently misrepresenting to defendant that the Basic units were fit for their intended purpose. In Count IV, B&V seeks recovery under a theory of promissory estoppel. Defendant claims that it relied to its detriment on plaintiffs' promise, representation and warranty regarding the Basic Model 7000B Units. (Exh. "E," p. 23). Elm/NIPSCO challenges B&V's counterclaims with 16 defenses.

SUBPOENAS

Both plaintiffs, Elm/NIPSCO, and defendant, B&V, in the Michigan litigation issued subpoenas to Basic/Flame and Envirotech requesting documents relating to the incinerators used in the Elm plant and now seek to compel responses to those subpoenas. B&V served a *subpoena duces tecum* on John Basic, Sr. to produce his company's records on November 15, 1995. On December 22, 1995, Elm/NIPSCO served a *subpoena duces tecum* on an employee of **[*10]** Envirotech for the production of the records of Envirotech and Flame Engineering, Inc. f/k/a Basic Environmental Engineering Inc.

Basic/Flame responded to B&V's subpoena on December 15, 1995 by making objections to the subpoena and refusing to produce any documents. Basic/Flame differentiates between the two subpoenas, but Elm/NIPSCO and B&V do not. Both subpoenas were issued to John Basic, Sr., John Basic, Jr. and Basic Envirotech, Inc. The Elm/NIPSCO subpoena was also issued to Flame Engineering, Inc. and Basic Environmental Engineering, Inc. The B&V subpoena was served on John Basic, Sr. whereas the Elm/NIPSCO subpoena was served on

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 8 of 22

Case 3:06-cv-00974-MEF-TFM          Document 35-7          Filed 05/24/2007          Page 8 of 22

an employee of Envirotech. (Defendants' Response, p. 2). John Basic, Sr. is the custodian of the records of Flame Engineering, Inc. f/k/a Basic Environmental Engineering, Inc. "Basic/Flame". Basic/Flame objects to the B&V and Elm/NIPSCO's definition of "Basic" as used in the subpoenas as inclusive of Basic Envirotech, Inc. because John Basic, Sr. is not an officer, director, shareholder or employee of Basic Envirotech nor is he the custodian of its records. (Defendants' Suggestions for B&V Subpoena, Exh. "A").

Envirotech, like Basic/Flame, designs **[*11]** and supplies waste to energy systems based on the Basic technology under a license. Envirotech objects that the subpoena by Elm/NIPSCO, served on an employee of Envirotech, requested documents of Basic/Flame because Envirotech is not the custodian of records for that company. (Defendants' Suggestions for Elm/NIPSCO Subpoena, Exh. "A"). Envirotech was incorporated on August 4, 1993. Envirotech is not an owner of Basic/Flame, and Basic/Flame is not an owner of Envirotech. (Suggestions for Elm/NIPSCO, p. 2) Basic/Flame and Envirotech made objections to the subpoena requests. (See Motion to Compel, Exh. "E").

Elm/NIPSCO and B&V then participated in conference calls and written correspondence with counsel for Basic/Flame pursuant to Local Rule 12K, but they were unable to reach an agreement regarding the production of the requested documents. (See Motion to Compel, Exh. "F") In the course of their discussions, Basic/Flame requested a protective order with a non dissemination provision limiting the use of the subpoenaed documents to the pending action. (Motion to Compel, Exh. "F") Elm/NIPSCO and B&V objected to Basic/Flame's proposed protective order, but they expressed their willingness **[*12]** to comply with a "reasonable" protective order identical to the one to which they had agreed for their own documents permitting the use of the subpoenaed documents in the related UK action. (Motion to Compel, p. 7). They also offered to pay reasonable compensation for the costs of Basic/Flame's and Envirotech's document production. (*Id.*) Elm/NIPSCO and B&V assert that Basic/Flame and Envirotech have used stalling tactics to delay the discovery of the requested documents. (*Id.*) Basic/Flame and Envirotech have not yet produced any documents.

In their motion to compel, Elm/NIPSCO and B&V assert that the central component of the Elm plant and a key issue in both the Michigan and the UK actions is the incinerator technology developed by John Basic, Sr. (Motion to Compel, p. 3) Elm/NIPSCO and B&V allege that Basic and his agents made express representations and guarantees regarding the combustion efficiency of the incinerators and their annual availability potential both before and after the selection of the Basic incinerator for the plant. (*Id.* at 4) They further allege that Basic and Basic/Flame's records will reveal the basis of the guarantees and representations and provide **[*13]** information relevant to the design, engineering and manufacture of the incinerators. (*Id.* at 4-5) Issues relating to the performance of the incinerators as well as issues regarding who investigated, selected and decided to use the Basic incinerators are raised by the parties in the Michigan action.

The Purchaser's Requirements' portion of the Elm/TBV contract for the waste incineration plant included five 7000B incinerators to a design by Basic Environmental Engineering, Inc. using technology developed by John Basic, Sr. (Motion to Compel, Exh. "A"). The incinerators were supplied to the Elm plant pursuant to a subcontract between TBV and Basic UK, a subsidiary of Blue Circle Industries PLC. Basic UK was a licensee of Basic/Flame. (Defendants' Response, p. 3)

Basic/Flame asserts that in other projects where it has supplied incinerators, the incinerators were supplied as a part of a complete system designed by Flame. In contrast, Basic/Flame claims that it supplied only the manufacturing information for the incinerator portion of the Elm project under a manufacturing license granted to Basic UK. Basic/Flame further asserts that the Basic Model 7000B was the first of its kind and **[*14]** was designed specifically for the Elm plant project's requirements which were provided by Elm. (Defendants' Suggestions for B&V Subpoena, p. 2-3). Basic/Flame asserts that approximately forty engineers worked

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255        Page 9 of 22

Case 3:06-cv-00974-MEF-TFM        Document 35-7        Filed 05/24/2007        Page 9 of 22

on the project for Flame, but only John Basic, Sr. is currently associated with Flame. (*Id.*) Basic/Flame also asserts that the information provided to Basic UK was provided pursuant to a confidentiality agreement. (*Id.* at 2).

On March 20, 1996 during a hearing before this Court B&V and Elm/NIPSCO again claimed that a crucial aspect of the litigation in Michigan is the five incinerators were designed with Basic technology and that the third-party subpoenas seek to obtain documents related to the incinerators. Counsel for Elm/NIPSCO admitted that one purpose for wanting the documents was to discover whether to add Basic/Flame *et., al.* as another defendant to the action. The attorney further stated that another purpose was to find out whether any of the representations made by the various parties regarding the capabilities of the incinerators had any basis in fact. Additionally, the attorney for B&V expressed the need for the requested documents to discover who selected **[*15]** the Basic incinerator. (B&V's Reply to Basic/Flame's Suggestions, Exh. "K" Transcript at 9.) The attorneys explained that they wanted the communications from Basic to B&V and to Elm and to NIPSCO as well as the basis for those communications. (*Id.* at 24).

Basic's attorney argues that the subpoenas are too broad and do not fit the Michigan litigation. (*Id.* at 18). Basic's lawyer said that they would be willing to produce documents regarding what Basic said to B&V and to Elm or NIPSCO and that they wanted their trade secrets to be protected and limited to the Michigan litigation. The court requested that Basic determine what it was willing to produce with an appropriate protective order as well as what it was not willing to produce and why. (*Id.* at 44) Pursuant to this request, Basic/Flame and Envirotech submitted their Response to the Motion to Compel and their Suggestions for Modification of Elm/NIPSCO Subpoena and Suggestions for Modification of B&V's Subpoena.

Basic/Flame and Envirotech, in their response to the motion to compel and their motion to quash the subpoenas, contend that the subpoenas and the motion to compel are being used to disguise an attempt to conduct **[*16]** discovery for the UK litigation. Basic alleges that Elm/NIPSCO's failure to challenge B&V's counterclaims with some type of dispositive motion and demonstrates that they are using the Michigan action in a joint effort to discover documents from Basic/Flame for use in the UK suit. (Defendants' Response at 9,10).

Basic/Flame further alleges that because English procedure does not allow for pre-trial discovery from third-parties, (Affidavit of Colin Crichton Mackay, Q.C., Defendants' Response, Exh. "C") B&V is using the Michigan case to get broad discovery to aid its affiliate TBV in its case against Basic UK. (Defendants' Response at 4). Finally, Basic/Flame claims that the scope of the subject matter described in the Michigan pleadings fails to coincide with either the documents requested or the reasons given in support of B&V and Elm/NIPSCO' motion (*Id.* at 10). Thus, Basic/Flame urges the court to grant its motion to quash the subpoenas.

In the alternative, Basic/Flame requests modification of the subpoenas. If ordered to comply with the subpoenas, Basic/Flame requests a protective order to cover the production of any documents meeting the definition of trade secrets or confidential **[*17]** research, development or commercial information which would limit the use of the requested documents to the pending action. Elm/NIPSCO and B&V initially objected to the proposed protective order because the UK action involves almost the same parties, Elm and B&V's 50% owned affiliate, as well as the same plant, the same contract, the same facts and the same issue of the design and construction of the incinerators. (Motion to Compel, 7).

At the hearing on March 20, 1996, this Court proposed covering the parties, lawyers and experts in the English case under an order enforceable by agreement before this Court. (B&V's Reply to Suggestions, Exh. "K," Transcript at 19-21, 35). Elm/NIPSCO would agree to comply with an appropriate protective order which would permit the use of the documents in the UK and would allegedly protect the confidentiality and trade secrets of Basic/Flame. B&V, however, has allegedly agreed not to use the discovered documents in the UK litigation.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 10 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 10 of 22

(B&V's Response to Suggestions, at 13). Basic/Flame and Envirotech claim that B&V advised them on April 8, 1996 that TBV has not accepted the court's proposal and that the proposal should therefore be considered rejected. **[*18]** (Defendants' Suggestions for B&V Subpoena at 15).

Envirotech also requests modification of the subpoena if ordered to comply with it. Envirotech asserts that it was not the designer or supplier of the incinerators for the Elm plant. Envirotech had no communication with Elm before the Elm/TBV contract because it was not yet in existence. Envirotech claims that the only documents in its possession pertaining to the Elm plant and requested by the subpoena would involve technical support provided to Basic UK in May 1994 regarding the computer program that sequences the operation of the incinerators, the sale of replacement parts (molded rubber bumpers) to Elm for the incinerators in February 1995, and various correspondence with Elm and NIPSCO regarding a request for a control logic diagram, for a plant visit, and for Envirotech's field service rates. (Defendants' Suggestions for Elm/NIPSCO Subpoena at 2-3).

Finally, B&V, in their Reply to Basic/Flame's Suggestions for Modification, assert that Basic's opposition to the subpoenas has caused substantial additional and unnecessary expenses for Elm/NIPSCO and B&V as well as causing undue delay in the discovery process. They claim that Basic/Flame's **[*19]** objections are frivolous and without substantial justification and that the court should order Basic to pay B&V's costs under F.R.C.P. 37(a)(4).

## DISCUSSION

B&V and Elm/NIPSCO served subpoenas duces tecum for the production of documents on nonparties Basic/Flame and Envirotech pursuant to F.R.C.P. 45. *HN1* Rule 45(c)(2)(B) allows the subpoenaed party to object to the inspection and copying of documents within fourteen days after service.

Following the service of the subpoenas, Basic/Flame and Envirotech made objections and refused to produce any of the requested documents. (Motion to Compel, Exh. "E"). *HN2* According to the Federal Rules of Civil Procedure, after objections are made, the party serving the subpoena may move for an order to compel production of documents at any time. F.R.C.P. 45(c)(2)(B). In order to quash or modify a *subpoena duces tecum* under the Federal Rules, Basic/Flame and Envirotech must demonstrate that the subpoena subjects them to an undue burden F.R.C.P. 45(c)(3)(A)(iv); or that the subpoena requires disclosure of trade secrets, confidential research, development or commercial information Fed. R. Civ. P. 45(c)(3)(B)(i).

The party moving to quash a subpoena **[*20]** bears the burden of proving that the subpoena is unreasonable or oppressive. *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987). Thus, Basic/Flame and Envirotech bear the burden of demonstrating that the subpoenas should be quashed which is a heavier burden than that required for demonstrating the need for a more limited protection such as a protective order. *Id.* For the reasons set forth below, this court finds that Basic/Flame and Envirotech have not demonstrated that the subpoena should be quashed. Thus the motion to compel is hereby granted with certain modifications.

In their motion to quash, Basic/Flame and Envirotech primarily argue that the subpoenas issued by Elm/NIPSCO and B&V in their federal court case in Michigan is a disguised attempt to conduct discovery for the pending litigation in the UK and therefore should be quashed. (Defendants' Response at 2). *HN3* For the court to disallow the subpoenas on such grounds, Basic/Flame and Envirotech would have to conclusively demonstrate that the discovery for the Michigan lawsuit is a sham. Although the federal rules allow for broad discovery, they do not sanction the use of discovery **[*21]** in one case as a sham for conducting discovery

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255                    Page 11 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 11 of 22

solely for a different case or to circumvent limitations on discovery in a different action. *Wilk v. American Medical Assoc.*, 635 F.2d 1295, 1300 (7th Cir. 1980); *Campbell v. Eastland*, 307 F.2d 478 (5<th> Cir.), *cert. denied*, 371 U.S. 955, 83 S. Ct. 502, 9 L. Ed. 2d 502 (1962) See Wright & Miller § 2040, at 291-295.

In their effort to show that the Michigan discovery is a sham, Basic/Flame and Envirotech point to the nature of the Michigan case, the subpoena requests themselves, plaintiffs' refusal to accept a protective order that would disallow use of the defendants' documents in the English case, and B&V's and Elm/NIPSCO's failure to make dispositive motions before beginning discovery.

Basic/Flame and Envirotech also contends that the subpoenas should be quashed because B&V and Elm/NIPSCO have an agreement amongst themselves to conduct discovery for the English case via discovery in the Michigan case. (Defendants' Response at 2-3). Basic/Flame's and Envirotech's only evidence of such an agreement amongst B&V and Elm/NIPSCO is B&V and Elm/NIPSCO's joint discovery plan which was submitted to this court. **[\*22]** (Motion to Compel, Exh. "J"). This Court finds both arguments to be unpersuasive because it merely demonstrates that the parties conducted discovery planning meetings and agreed to pursue discovery from a variety of entities including Basic/Flame and Envirotech for the Michigan action. It does not indicate that they were planning to pursue discovery from Basic/Flame and Envirotech purely for purposes of getting discovery not available under English law.

As further evidence of B&V and Elm/NIPSCO's alleged effort to obtain discovery for use in the UK action, Basic/Flame and Envirotech contend that B&V and Elm/NIPSCO have pleaded affirmative defenses which should have been raised by a motion to dismiss or by a motion for summary judgment. (Defendants' Response at 7). Basic/Flame and Envirotech claim that B&V and Elm/NIPSCO' failure to make dispositive motions in lieu of affirmative defenses is due to the possible usefulness of those claims for discovering documents from Basic/Flame and Envirotech for use in the UK. (Defendants' Response at 9-10). This third argument is also without merit. Discovery has not closed in this case and it is easy to understand why motions for summary judgment **[\*23]** have not yet been filed. This is a very complex case which involves a number of parties and it is not clear precisely what went wrong. Discovery will need to be completed before the parties will be in a position to file substantive motions.

In addition, the cases cited by Basic/Flame and Envirotech to demonstrate instances of sham discovery are not analogous to the present case. In general, the cases offered demonstrate instances where a party filed an action in federal court after having been denied discovery in another forum. *See Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.*, 744 F. Supp. 450 (S.D. N.Y. 1990); *Beard v. New York Central R.R. Co.*, 20 F.R.D. 607, 608-610 (N.D.Ohio, 1957); *Bachrach et al. v. General Investment Corporation et, al.*, 31 F. Supp. 84, 86 (S.D.N.Y. 1940). In *Beard*, it was only after the plaintiff's motion to compel production of documents was denied by the state court that the plaintiff proceeded to file an action against the same defendant in federal court. The court held that the defendant would not be required to answer until it appeared probable that the answers would be used for discovery or as evidence in the federal **[\*24]** action. 20 F.R.D. 608-610. In *Bachrach*, it seemed that the outcome of pending state actions might preclude the federal action from coming to trial, and that the depositions sought were for use in the state action. Thus, the court held that the depositions would be deferred until the conclusion of the state action unless the federal action went to trial in the meantime. *Id.* at 86.

As Basic/Flame and Envirotech have argued, the parties to the UK litigation likely have an interest in gathering as much information as possible about the Basic incinerators. Further, B&V and Elm/NIPSCO admit that they would like to share documents produced in Michigan with their affiliates in the UK litigation. (Motion to Compel at 10). However, *HN4* the fact that the parties to the separate action in the UK would be interested in the discovery that the

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 12 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 12 of 22

parties to this action may obtain does not necessarily lead to the conclusion that the parties should be precluded from getting discovery. "Unless it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum, federal courts do allow full use of the information in other forums." **[*25]** *Johnson Foils v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973)*(emphasis added). Even if, as Basic/Flame and Envirotech assert, the UK litigants could not get discovery from a third party in the US without a subpoena specifying the documents requested (Defendants' Response, Exh. "C"), this is not a valid reason to deny B&V and Elm/NIPSCO access to documents relevant to the Michigan action.

Finally, Basic/Flame and Envirotech direct the court's attention to 28 U.S.C. § 1782 which pertains to direct actions for discovery by foreign litigants. *HN5* 28 U.S.C.A § 1782 provides in part that "the district court of the district in which the person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or document or other thing produced, before a person appointed by the court..." 28 U.S.C.A § 1782. A majority of courts interpreting the statute have adhered **[*26]** to the rule that the discovery sought in a direct action by foreign litigants must be allowed in the arena in which the case is pending. (Defendants' Response at 4-5). *See In Re Application of Asta Medica S.A.*, 981 F.2d 1 (1<st> Cir. 1992); *In Re Letter Rogatory From The First Court of First Instance In Civil Matters, Caracas, Venezuela*, 42 F.3d 308; (5th Cir. 1995); *In Re Lo Ka Chun, 858 F.2d 1564 (11th Cir. 1988); John Deere Ltd. v. Sperry Corporation, 754 F.2d 132 (3d Cir. 1985); In Re Letter of Request From Crown Prosecution Service of the United Kingdom*, 276 U.S. App. D.C. 272, 870 F.2d 686 (D.C. Cir. 1989). *Compare In Re Application of Euromepa S.A.*, 51 F.3d 1095 (2d Cir. 1995) (the Second Circuit held that 28 U.S.C. § 1782 does not require that the discovery sought in the United States is discoverable in the foreign jurisdiction).

The Seventh Circuit has not yet addressed the applicability of this discovery rule. The only case to address 28 U.S.C. § 1782 in this District, is *Verson Int'l Ltd. v. Allied Prod. Corp.*, 1987 WL 17837 (N.D. Ill.) an unpublished opinion. In *Verson* the court found that a request under the statute would be left to the court's **[*27]** discretion.

However, *HN6* a plain reading of the statute does not require a district court to explore whether the discovery is allowed in the foreign forum. 28 U.S.C.A. § 1782. In addition, considering the ruling in *Verson* and the Second Circuit's rule that the material sought in the United States need not be discoverable in the original foreign jurisdiction, it remains possible that in this circuit the UK litigants could be granted access to the documents requested. Finally, Elm/NIPSCO maintains that third party discovery is available in the British courts by a rogatory motion. (Response to Suggestions for Elm/NIPSCO Subpoena at 5).

As further argument that the discovery is a sham, Basic/Flame and Envirotech contend that the subpoena requests are not relevant to the Michigan case. Thus, the court must determine whether and/or which of the subpoena requests are relevant to the Michigan action.

*HN7* In general, the federal rules allow for broad discovery in order that the parties may gain full knowledge of the issues of the case. *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). More specifically, the Federal Rules of Civil Procedure allow discovery regarding "any **[*28]** matter, not privileged, which is relevant to the subject matter involved in the pending action ... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P.26(b)(1). Thus, the principle requirement for a *subpoena duces tecum* is that it be relevant to the subject of the pending case.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 13 of 22

Case 3:06-cv-00974-MEF-TFM      Document 35-7      Filed 05/24/2007      Page 13 of 22

Likewise, *HN8* Fed.R.Ev. Rule 401 states that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Cited in *New York State Energy Research and Development Authority v. Nuclear Fuel Services, Inc.*, 97 F.R.D.709, 712-713 (W.D.N.Y. 1983). In general, relevancy for discovery purposes should be liberally construed. See Wright and Miller § 2008. Relevance should be measured by the general relevance to the subject matter and the legal issues present in the case rather than the precise issues presented by the pleadings. *Transcontinental Fertilizer Co. v. Samsung Company, Ltd.* 108 F.R.D. 650, 652 (E.D.Pa. 1985). If there is **[\*29]** a possibility that the discovery sought may lead to information relevant to the subject matter of the action, then the discovery should generally be allowed. Fed.R.Civ.Pro.26(b)(1); *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 544 (N.D. IN 1991); Wright and Miller § 2008. *HN9* In deciding whether to quash or modify the subpoenas or to compel answers to them, the court must balance the "relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987) citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 560, 564 (7th Cir. 1984).

In addition, *HN10* "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.'" *Truswal*, 1211-1212, *citing Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961). If relevance is unclear, Rule 26(b)(1) indicates that the court should be permissive. *Truswal*, 1211-1212 (*citing Heat & Control, Inc. v. Hester* **[\*30]** *Industries, Inc.*, 785 F.2d 1017, 228 U.S.P.Q. (BNA) 926 (Fed.Cir.1986).

In this case, the district court is supervising the discovery of documents which are to be used in the Michigan action. Thus, the court should be permissive regarding the relevancy of the discovery requests to the pleadings. If the documents sought bear no discernible relevance to the case at hand, the subpoenas requested by B&V and Elm/NIPSCO should be quashed.

Basic/Flame and Envirotech contend that B&V and Elm/NIPSCO have not demonstrated that the requested documents fall within the scope of the Michigan case. (Defendants' Response at 10). However, this court finds that B&V and Elm/NIPSCO have successfully demonstrated that at least some of the documents requested are relevant to the issues in the Michigan action which is premised on the failure of the Elm plant and the Basic incinerators to live up to the terms of the Elm/TBV contract. Plaintiffs and defendant in the Michigan litigation agree that the Basic incinerators constitute a central feature of the Elm plant and allege that Basic UK and Basic offered guarantees regarding the combustion efficiency and the annual availability potential of the incinerators. (B&V **[\*31]** Response to Suggestions, Exh "A").

A number of the documents requested are relevant to Counts I and IV of the plaintiffs' complaint which are alleged to arise out of the performance problems of the incinerators designed by Basic. (B&V's Reply to Suggestions at 6). Count I of Elm/NIPSCO's complaint is for negligent misrepresentation by B&V's Adam. Elm/NIPSCO claim that P.J Adam represented that the Elm plant was capable of reaching certain output levels and thereby induced Elm/NIPSCO to amend the Elm/TBV contract to their detriment. (Complaint, para. 13) They further claim that P. J. Adam's representations were largely based on the performance of the Basic incinerators. (Elm/NIPSCO's Response to Suggestions at 4). The Basic documents regarding the actual capabilities of the Basic 7000B incinerators are relevant to Elm/NIPSCO's claim (and B&V's defense) and must be produced (Subpoena Requests 2a,c,d,e).

On the other hand, Basic/Flame and Envirotech allege that Elm/NIPSCO's claim for negligent

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 14 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 14 of 22

misrepresentation is based on a statement of opinion regarding the capabilities of the Elm plant rather than on a statement of fact and it therefore cannot form the basis of a claim for negligent **[*32]** misrepresentation. (Defendants' Suggestions for B&V's Subpoena at 6) They rely on *City National Bank of Detroit v. Rodgers & Morgenstein*, 155 Mich. App. 318, 399 N.W.2d 505, 507-08 (1987), appeal denied to assert that only misrepresentations of fact and not statements of opinion can serve as the bases for claims of negligent misrepresentation. This argument is not persuasive.

In *City National Bank*, a bank sought and received an attorney's legal opinion regarding the authority of managing partners to bind a partnership in the absence of the concurrence of the other partners. The court found that the legal opinion "amounted to an expression of opinion in the exercise of professional judgment rendered upon facts fully disclosed and known to all." 399 N.W.2d at 507. Basic/Flame asserts that the statements by Adam were statements of opinion because the only 7000B incinerators built were built by Basic UK for the Elm plant. (See Exhibit "C" of Defendants' Suggestions for B&V's Subpoena). However, P.J. Adam purportedly stated the plant was capable of reaching certain output levels. (Defendants' Response, Exh. "D," at 7). These statements could reasonably be interpreted **[*33]** as statements of fact if they had been premised on research or testing of the incinerators. Therefore, Elm/NIPSCO could conceivably have a claim for negligent misrepresentation and the Basic documents regarding the capabilities of the 7000B incinerators are relevant as to whether Adam's statements were based on any documented information.

Elm/NIPSCO's Count IV relates to B&V's alleged negligence in reviewing, approving and redesigning the design of the yoke beam assembly for the Basic incinerators. Basic/Flame and Envirotech assert that because B&V and Elm/NIPSCO agree that Basic's original design was insufficient (Defendants' Response, Exh. "D," Elm/NIPSCO Complaint, Count IV P34, B&V Answer P34), the issue is eliminated from controversy. (Defendants' Suggestions for B&V Subpoena at 12). Basic/Flame and Envirotech cite *FDIC v. W.R. Grace & Company*, 691 F. Supp. 87, 91-92 (N.D.Ill. 1988) where the defendant claimed that the FDIC had failed to prove that the claim against the defendant was assigned to the FDIC. The court in that case found that the fact of the assignment was admitted in the defendant's answer and decided pre-trial and that it was therefore unnecessary for the FDIC **[*34]** to prove the fact of the assignment at trial. *Id.* Thus, ^HN11^once facts are admitted they are not in dispute and no evidence is needed to prove them. B&V's statement that Basic's original design was insufficient is not an admission of negligence in the review, approval and redesign of the assembly but they are certainly relevant to what went wrong regarding the design and manufacture of the yoke beams.

B&V's third affirmative defense is that plaintiff's damages are due to the negligence of non-party Basic. ^HN12^Under Michigan law, a defendant has the right to introduce evidence that the plaintiff's damages are due to a third party's negligence even if the other allegedly negligent party is not a party to the action. *Laney v. Celotex*, 901 F.2d 1319, 1320 (6th Cir. 1990). In *Laney v. Celotex*, a worker brought suit for damages for injuries arising from alleged asbestos exposure, and the trial court found the manufacturer negligent. On appeal, the court held that evidence of other asbestos products to which the worker may have been exposed was relevant, and the trial court erred in excluding that evidence. *Id.* 1319, 1320. Similarly, B&V wants to introduce evidence that Basic/Flame's **[*35]** negligence led to Elm/NIPSCO's alleged damages. B&V provides evidence that John Basic, Sr. admitted to errors in the design of the incinerators both before and after the Chicago meeting where Adam allegedly made the statements that serve as the basis for Count I of Elm/NIPSCO's complaint. (B&V's Response to Suggestions at 5, Exh. "C", "D"). B&V further points out that the document in Exhibit "D" demonstrates that Basic was involved in the re-design of the incinerators after the 1994 meeting. (B&V Response to Suggestions at 6). Because this Court finds that these documents regarding the Basic 7000B incinerators and their capabilities could be relevant to why the incinerator did not perform to capacity they must be produced.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255        Page 15 of 22

Case 3:06-cv-00974-MEF-TFM      Document 35-7      Filed 05/24/2007      Page 15 of 22

B&V's defense and counterclaim also raise the issues of who investigated, selected and decided to use the Basic incinerators. B&V alleges that Elm/NIPSCO selected the Basic technology without adequately investigating the technology prior to TBV and B&V's involvement with the project. B&V provides correspondence indicating that Elm and Basic UK and Basic/Flame were in contact regarding the Elm plant as early as September 1991. (B&V's Response to Suggestions, Exh. **[*36]** "B", Exh. "G"). B&V also provides evidence of discussions between Basic and NIPSCO and Elm regarding a plant in Belgium using Basic incinerators which took place a year prior to the Elm/TBV contract. (Exh. "F"). Basic/Flame's documents from before and after the date of the Elm/TBV contract relating to any joint venture with Elm or NIPSCO to market the Basic incinerators would be relevant to B&V's counterclaim and defenses that Elm/NIPSCO selected the Basic incinerators after an inadequate investigation of their capabilities.

B&V claims that Elm/NIPSCO had a duty to B&V as a sub-contractor on the project because they selected the Basic incinerators. (B&V's Response to Suggestions at 4.) B&V points to *Green Const. Co. v. Williams Form Engineering*, 506 F. Supp. 173 (WD Mich. 1980) where the court found that *HN13* an owner had a duty to a contractor when the owner took responsibility for approving the materials to be used by the contractor. (B&V's Response to Suggestions at 4). Whether the Basic documents requested provide any evidence that Elm/NIPSCO had more knowledge and information than B&V regarding the Basic technology is relevant to B&V's defense and counterclaim. (*Id.* at 7)  **[*37]**

Basic/Flame asserts that B&V's subpoena is unjustifiably broad in requesting all documents supporting the research, science or engineering that support all statements by Basic/Flame to B&V and Elm/NIPSCO. (Defendants' Suggestions for B&V's Subpoena at 4). *See Lever Bros. Co. V. Proctor & Gamble Mfg. Co.*, 38 F. Supp. 680, 684 (D.C.Md. 1941)(held that requests such as that for 'all written reports, memoranda, or other records of conferences of officers or members of the technical staff of the defendants ... in which the processes employed or to be employed in the manufacture of new Ivory soap were discussed' were too broad). Basic/Flame and Envirotech claim that the requests violate Rule 45(c)(1) in that it would impose an "undue burden or expense" upon them.

This court finds that the some of the document requests contained in the subpoenas are too broad as issued. However, *HN14* "when a court is confronted with a motion to quash such a subpoena, its duty is not to deny any discovery, but to reduce the demand to what is reasonable, considering the discoverer's needs and the discoveree's problems." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. 1984). Thus, the **[*38]** court must consider each subpoena request and determine what is reasonable. In addition, Basic/Flame and Envirotech have estimated that the documents requested would comprise 11 banker's boxes. (Motion to Compel, Exh. "F"). With the modifications set out below, the number of documents to be produced should comprise less than the estimated 11 bankers' boxes, and as such is not an undue burden. In addition, B&V and Elm/NIPSCO have repeatedly expressed their willingness to pay the reasonable expenses of production. (B&V's Response to Suggestions at 12). Therefore, the cost of producing the documents does not place an undue burden on Basic/Flame and Envirotech.

## MODIFICATIONS TO THE B&V SUBPOENA

Only requests numbers 1, 2a, 2c, 2d, 2e, 3, 4, and 5 are in controversy with respect to the B&V subpoena because Flame has represented that it has no documents in its possession fitting the remaining other requests.

**Request No. 1:** All correspondence regarding the project between Basic and (1) Basic Energy (UK), (2) Elm, (3) any NIPSCO company, (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255                    Page 16 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 16 of 22

**Request No. 1 is granted as modified:** All correspondence regarding **[\*39]** the Elm project between Basic/Flame and (1)Basic Energy UK, (2)Elm, (3) NIPSCO (4)Black & Veatch, (5)TBV Power, and (6)Blue Circle during the years 1990 to 1995.

Basic/Flame has objected to Request No. 1 because it is allegedly overbroad, burdensome and not in compliance with Rule 34(b). Basic's argument is correct in part because it clearly would be unduly burdensome to request Basic/Flame to produce all correspondence with respect to six different companies. However, this request is relevant in part as to the correspondence between the years 1990-1995 because this period roughly covers the time period of Basic/Flame's involvement in the project.

**Request 2a:** All documents regarding the combustion efficiency of the Basic 7000B incinerator, including its efficiency in the burnout of carbonaceous material.

**Request 2a will not be modified.**

The combustion efficiency of the Basic incinerators is pertinent to Elm/NIPSCO's allegations that B&V misrepresented the plant's capabilities on January 5, 1994 and a B&V argues is at the heart of the dispute. The requested documents could contain or could lead to the discovery of information regarding the incinerators' efficiency **[\*40]** depending on the mix of tyres and is relevant to whether the statements made by P.J. Adam were "obvious statements of opinion" or fact and whether Elm/NIPSCO reasonably relied on any statements. The requested documents are also relevant to B&V's defense and counterclaims.

**Request 2c:** All documents relied upon by Basic to guarantee or represent the overall annual availability, efficiency of burnout of carbonaceous materials, and the capability to produce steam and flue gas, of the Basic 7000B incinerators used in the Elm Project.

**Request No. 2c will be granted as modified:** All documents relied upon by Basic to guarantee or represent to Elm/NIPSCP and B&V the overall annual availability, efficiency of burnout of carbonaceous materials, and the capability to produce steam and flue gas, of the Basic 7000B incinerators used in the Elm Project.

This Court agrees with Flame that this request is overbroad and thus it has been limited to Elm/NIPSCO and B&V. It is now reasonably particular in what it seeks as to the guarantees and representations made to Elm/NIPSCO and B&V.

**Request No. 2d:** All documents regarding the design and manufacture of the Yoke **[\*41]** beams for the Basic 7000B incinerators used in the Elm Project.

**Request No. 2d will be modified to read:** All documents communicated to B&V regarding the design drawings for the Yoke beams for the Basic 7000B incinerators used in the Elm Project.

**Request No. 2e:** All documents in the possession of Basic in 1989, 1990, 1991 and 1992 regarding the combustion efficiency of any Basic incinerators.

**Request 2e is denied.**

This request is overbroad and creates an unnecessary burden to Basic/Flame. This case revolves around the Basic 7000B incinerator. The combustion efficiency of other Basic incinerators which may run on different fuels (B&V Sugg, 5) and be of different design is not relevant to the case at hand. Any relevant documents would be included in the response to Request No. 2c.

**Request No. 3:** All agreements with Basic to pursue or develop worldwide, plants using

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255    Page 17 of 22

Case 3:06-cv-00974-MEF-TFM    Document 35-7    Filed 05/24/2007    Page 17 of 22

Basic incinerators or to market Basic incinerators or technology.

**Request no. 3 is denied.**

This request is overbroad and creates an unnecessary burden to Basic/Flame. Agreements which Basic has entered into as well as marketing information is irrelevant to the issues **[*42]** in the Michigan litigation. Further, Basic has represented that it is not presently aware of any documents in its possession fitting this category. B&V can get these documents from Elm/NIPSCO if that in fact is all it is seeking.

**Request No. 4:** All correspondence between Basic and NIPSCO or Elm concerning developing plants using Basic incinerators.

**Request No. 4 is denied for the same reasons set forth in 3.**

**Request No. 5:** All agreements between Basic and Basic UK, BEE or George Harrison relating to the marketing and licensing of Basic incinerators.

**Request No. 5 is hereby denied.**

**MODIFICATIONS TO THE ELM/NIPSCO SUBPOENA**

Only requests numbers 1, 2a, 2b, and 3 are in controversy because there are no documents in Basic/Envirotech's possession fitting the other requests.

**Request No. 1:** All correspondence regarding the project between Basic and (1) Basic Energy (UK), (2) Elm, (3) any NIPSCO Company, (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle.

**Request No. 1 will be granted as modified:** All correspondence regarding the Elm project between Basic/Flame and (1) Basic Energy UK, (2) Elm, (3) any NIPSCO company,  **[*43]** (4) Black & Veatch, (5) TBV Power, and (6) Blue Circle during the years 1990-1995 and correspondence with B&V regarding the original design or B&V's redesign of the yoke beams.

**Request No. 2a:** All documents regarding any burn tests or pilot tests conducted for the Basic 7000, 7000A, and 7000B incinerators;

**Request No. 2a is granted as modified:** All documents regarding the burn tests or pilot tests conducted for the Basic 7000 and 7000B incinerators;

This Court agrees with Basic that no documents regarding the 7000A incinerator should be produced since it never was manufactured.

**Request No. 2b:** All documents regarding any burn tests or pilot trials conducted for the Basic 7000, 7000A and 7000B incinerators.

**Request No. 2b is granted as modified:** All documents regarding any burn tests or pilot trials conducted for the Basic 7000 and 7000B incinerators.

This Court agrees with Basic/Flame that no documents should be produced as to the 7000A incinerator because it was never manufactured. These documents should be produced at the Stroud plant in Oklahoma.

**Request No. 2d:** All documents regarding the design and manufacture of the **[*44]**  Yoke beams for the Basic 7000, 7000A and 7000B incinerators.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 18 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 18 of 22

**Request No. 2d. is denied.**

Basic/Flame has represented that it has no documents covering the Yoke beam at the Elm plant.

**Request No. 3:** All agreements with Basic to pursue or develop worldwide, plants using Basic incinerators or to market Basic incinerators or technology.

**Request No. 3 is denied.**

This request is irrelevant to any issues in the Michigan litigation.

**PROTECTIVE ORDER**

All parties involved in this action are in agreement that a protective order for certain confidential information and trade secrets is appropriate. However, the parties disagree as to the form the protective order should take. (See, Motion to Compel, Exh. "H", "I"). Basic/Flame and Envirotech have requested a protective order that would prevent the use of the subpoenaed documents in the UK action. (See Id. Exhibit "H"). In contrast, B&V and Elm/NIPSCO initially maintained that they would agree to a protective order that would protect the confidential information and trade secrets of Basic/Flame and Envirotech while allowing the use of the subpoenaed documents in the UK action. See Id. Exh. "I"). **[\*45]** However, B&V has since allegedly agreed to limit the use of the discovered documents to the Michigan action. (B&V's Response to Suggestions at 13). Therefore, only Elm/NIPSCO continues to insist that the subpoenaed documents should be made available to the UK litigants. (Elm/NIPSCO's Response to Suggestions at 5).

*HN15* Generally, the parties to an action may use information obtained through discovery as they wish. *See Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 545 (N.D. Ind. 1991); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988), *cert. denied,* 488 U.S. 1030, 109 S. Ct. 838, 102 L. Ed. 2d 970 (1989); *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), *cert. denied,* 440 U.S. 971, 99 S. Ct. 1533, 59 L. Ed. 2d 787 (1979)("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings"). However, Rule 26(c) allows a district court to issue protective orders for discovery materials when good cause is shown. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d at 789. *HN16* Rule 26(c) of the Federal Rules of Civil Procedure provides **[\*46]** that: "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court...may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including one or more of the following: (1) that the discovery not be had; ... (7) that a trade secret or other confidential research development, or commercial information not be disclosed or be disclosed only in a designated way." The party seeking the protective order has the burden of demonstrating that good cause exists for the granting of that order. *See United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993). Courts have interpreted "good cause" in a variety of ways. *See Culinary* at 300 n. 1. Broad allegations of harm without specific examples or clear reasoning do not constitute good cause under the Rule 26(c) test. *Cippollone v. Liggett*, 785 F.2d at 1121. The court's understanding of the background facts along with the court's common sense should be a guide as to whether good cause has been established. *Zenith Radio Corp.* **[\*47]** *v. Matsushita Electric Industrial Co., Ltd.*, 529 F. Supp. 866, 891 (E.D.Pa. 1981). A non-party may show good cause more easily than a party. *Wauchop*, 138 F.R.D. at 546; citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). One way of showing good cause is by demonstrating that a discovery request seeks trade secrets. *See, e.g., Ball Memorial Hospital, Inc. v. Mutual Hospital Ins., Inc.*, 784 F.2d 1325, 1346 (7th Cir. 1986).

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 19 of 22

Case 3:06-cv-00974-MEF-TFM          Document 35-7          Filed 05/24/2007          Page 19 of 22

B&V and Elm/NIPSCO do not dispute that Basic/Flame and Envirotech have shown good cause for a protective order with a non dissemination provision covering documents which contain trade secrets or confidential research, development or commercial information under Rule 45(c)(3)(B)(i). The documents requested by the subpoenas are largely related to the Basic incinerators which use the Basic Pulse Hearth technology patented by John Basic, Sr. Basic/Flame supplied their patented technology to Basic UK under a confidentiality agreement. (Defendants' Suggestions For B&V Subpoena, Exh. "A"). In addition, Basic/Flame claims that the incineration of waste to produce energy without polluting the atmosphere is a growing industry in which **[*48]** B&V and TBV are competitors of Flame and Elm and NIPSCO are potential competitors of Flame's customers. (*Id.* at 3). These claims support the need for a protective order regarding confidential documents and trade secrets to protect Basic/Flame and Envirotech's competitive position. Thus, the requested documents which fall under the definition of confidential as set forth in the Protective Order below shall be protected from disclosure.

Basic/Flame and Envirotech must also demonstrate good cause for a protective order with a non dissemination provision. *Wauchop*, 138 F.R.D. at 545. In this case, Basic/Flame and Envirotech are legitimately concerned that B&V and Elm/NIPSCO intend to share the discovered documents with their affiliates in the UK. However, *HN17* using the discovered information from one lawsuit in connection with another litigation comes squarely within the purposes of the Federal Rules of Civil Procedure. *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981).

In their motion to compel, B&V and Elm/NIPSCO point to *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539 (N.D. Ind. 1991) to support their contention that Basic/Flame and **[*49]** Envirotech have not shown good cause for the inclusion of a non dissemination provision. In *Wauchop*, Domino's was concerned that others would use the discovery information in present or future threatened litigation against Domino's, and the plaintiffs admitted their intent to share their discovery information with others. Even so, the court held that *HN18* "the general risk of ... collaborative sharing of information does not constitute good cause for a protective order under Rule 26(c)." *Id.* at 545. In *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405 (N.D. N.Y. 1973), the defendant sought a protective order with a non dissemination provision which would have prevented the plaintiff from sharing the discovered information with its related entities in a foreign litigation. In that case, the court found that *HN19* if there is no evidence of bad faith by the discovering party, federal courts allow the use of the discovered information in other forums. *Id.* at 410.

In this case, there is no evidence of bad faith by the discovering party. Therefore, the discovered materials from this litigation which are not designated "confidential" may be used by the related entities in other forums. **[*50]** However, as Envirotech asserts, "movants have submitted no authority allowing the use of documents covered by a protective order issued to cover confidential documents in another proceeding." (Defendants' Suggestions for Elm/NIPSCO Subpoena at 8). Thus, those documents which are designated "confidential" shall be used only in preparation for trial, at trial and on appeal of the pending action.

Basic/Flame and Envirotech have a legitimate concern that B&V and Elm/NIPSCO be responsible for misuse of discovered information, particularly considering that Flame is a small company in comparison with NIPSCO and B&V. (Defendants' Suggestions for B&V Subpoena at 14). Therefore, this court will require that the Protective Order contain the clause set forth in Paragraph 6 below holding the party employing the person or expert liable for any non-compliance with the protective order.

Elm/NIPSCO, in contrast to Basic/Flame and Envirotech, claims that the parties to the English action would be able to get discovery from a non-party such as Basic/Flame or Envirotech.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255          Page 20 of 22

Case 3:06-cv-00974-MEF-TFM     Document 35-7     Filed 05/24/2007     Page 20 of 22

(Elm/NIPSCO's Response to Suggestions at 5). Because Elm/NIPSCO continues to claim that English courts allow pre-trial discovery from **[*51]** third parties and because B&V and Elm/NIPSCO have provided no evidence that the parties to the UK action would abide by a protective order issued by this court, this court requires that the protective order containing a non dissemination provision set forth below be in effect.

Request for Attorney's Fees

*HN20* Under F.R.C.P. 37(a)(4)(C), the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." The court finds that Basic/Flame and Envirotech were substantially justified in making their objections to the subpoena requests. Therefore, the court finds the award of attorneys' fees to B&V not justified under the circumstances.

## PROTECTIVE ORDER

In order to protect and maintain the confidentiality of certain documents subpoenaed by the parties to this litigation from deponents Flame Engineering, Inc. f/k/a Basic Environmental Engineering Inc. ("Basic/Flame") and Basic Envirotech, Inc. ("Envirotech") and to avoid unnecessary disclosures of those documents and the information contained therein, the Court hereby enters the following protective order:

1. In responding to subpoenas served upon them in the **[*52]** action entitled: *ELM ENERGY AND RECYCLING (U.K.) LIMITED and NIPSCO DEVELOPMENT COMPANY, INC. v. BLACK & VEATCH*, Case NO. 95-CV-73128-DT, pending in the United States District Court for the Eastern District of Michigan (the "Pending Action"), Basic/Flame and Envirotech shall be permitted to designate documents as containing confidential information and subject to this Protective Order by marking them "Confidential." All copies, duplicates, or information extracted from such documents shall be subject to and handled under the terms of this Protective Order to the same extent and in the same manner as the original documents.

2. As used in the Protective Order the term "confidential information" may be used if:

    a. the producing party is under a statutory, regulatory, contractual or other legal obligation to maintain such information as proprietary, or

    b. the information is a trade secret, is competitively sensitive, or would harm the producing party's business if disclosed; and

    c. the producing party has consistently in the ordinary course of its business treated the information as proprietary as to non-employees and non-agents of the producing party.

3. The **[*53]** documents subject to this Protective Order may be disclosed only to the parties to this case, and their officers, directors, and employees who have responsibility for the preparation for trial, trial, or appeal of the Pending Action; counsel of record in the Pending Action; counsel of record's clerical staff; witnesses at the time of their deposition or at trial; and expert witnesses for the parties in this action.

4. The documents subject to this Protective Order shall be used only in connection with preparation for trial, trial, or appeal of the Pending Action.

5. In the event that a document subject to this Protective Order, or information obtained

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255                    Page 21 of 22

Case 3:06-cv-00974-MEF-TFM      Document 35-7      Filed 05/24/2007      Page 21 of 22

from it, is used during the course of a deposition, that part of the deposition transcript that discusses or otherwise references the protected document or information shall be subject to the terms of this Protective Order. The party conducting the examination shall inform the court reporter of this order and instruct the reporter to identify the pages of the transcript as being subject to this order. The cover page of any deposition or transcript containing proprietary information must bear the following legend: "This document contains **[*54]** information designated as confidential." All copies, duplicates, extracts, etc., of such testimony shall be subject to the terms of this Protective Order to the same extent and in the same manner as the original transcripts.

6. Prior to disclosure to an officer, director, and employee of a party or an expert witness, such persons must agree to be bound by the terms of this Protective Order by executing the "Confidentiality Agreement" annexed hereto (See Exh. "H" or "I"§). The executed Confidentiality Agreement shall be maintained by counsel for the party employing the person or expert and a copy of it shall be provided to counsel for Basic/Flame and Envirotech. The party employing the person or expert shall be jointly and severally liable for any damages caused by such person's non-compliance with this order.

7. All persons in possession of documents, information and testimony subject to this Protective Order shall take all necessary and appropriate measures to maintain the confidentiality of those materials, shall share such information only with persons authorized to receive it pursuant to this Protective Order, and shall retain it in a secure manner.

8. Within 60 days after **[*55]** any order disposing of the Pending Action becomes final and no longer appealable, the persons who have obtained possession of the documents subject to this Protective Order shall at the option of the producing parties return or destroy all copies of the designated documents and destroy all transcripts and all extracts, summaries, or descriptions of the information taken from the documents or transcripts covered by this Protective Order.

9. Any materials subject to this Protective Order filed with the Court in the Pending Action shall contain a legend indicating that they contain information subject to a Protective Order dated xxxx, 1996 issued by the United States District Court for the Northern District of Illinois. Prior to any such filing, counsel for the parties will confer with the Court in the Pending Action on an appropriate method to protect from disclosure inconsistent with this order the confidential information when contained in court papers or utilized at trial. Counsel for the parties shall advise counsel for Basic/Flame and Envirotech of the procedures adopted.

10. The prohibition of disclosure of the documents, information and testimony subject to this Protective Order **[*56]** shall continue notwithstanding the termination of the Pending Action.

11. The provisions of this Protective Order shall be without prejudice to any party challenging whether any particular document or testimony should be designated confidential. The party challenging the confidential designation shall give notice to counsel for Basic/Flame and Envirotech and other counsel in this action. If the parties cannot resolve the dispute after good faith negotiations, the challenging party may seek an order from this Court that the particular document or testimony should not be subject to this Protective Order. Until such an order is obtained, the disputed document or testimony will be treated as confidential under the terms of this order.

12. This Protective Order may be modified by the court *sua sponte* or on motion of Elm, NIPSCO, B&V, Basic/Flame or Envirotech. Twenty-one days advance written notice shall be given to Elm, NIPSCO, B&V, Basic/Flame and Envirotech of any proposed modification of this protective order.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 15255        Page 22 of 22

Case 3:06-cv-00974-MEF-TFM        Document 35-7        Filed 05/24/2007        Page 22 of 22

**SO ORDERED**

**ENTER: OCTOBER 8, 1996**

**RONALD A GUZMAN**

**United States Magistrate Judge**

Service: **Get by LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 15255**
View: Full
Date/Time: Thursday, May 24, 2007 - 2:39 PM EDT

* Signal Legend:

🔴 -   Warning: Negative treatment is indicated

🟨Q -   Questioned: Validity questioned by citing refs

⚠️ -   Caution: Possible negative treatment

➕ -   Positive treatment is indicated

🅰️ -   Citing Refs. With Analysis Available

ℹ️ -   Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis   | Terms & Conditions
Copyright ©  2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 65 Fair Empl. Prac. Cas. (BNA) 1209          Page 1 of 5

Case 3:06-cv-00974-MEF-TFM     Document 35-8     Filed 05/24/2007     Page 1 of 5

Service: **Get by LEXSEE®**
Citation: **1994 U.S. Dist. LEXIS 13878**

*1994 U.S. Dist. LEXIS 13878, *; 65 Fair Empl. Prac. Cas. (BNA) 1209*

SUZANNE THORNTON WORKMAN, Plaintiff, v. CAROLINA FREIGHT CARRIERS CORPORATION, et al., Defendants.

CIVIL ACTION NO. 93-T-593-N

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

1994 U.S. Dist. LEXIS 13878; 65 Fair Empl. Prac. Cas. (BNA) 1209

April 8, 1994, Decided
April 8, 1994, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants moved for a reconsideration of an order from the trial court (Alabama), which granted plaintiff's motion to quash their notice of deposition duces tecum and for a protective order in an action claiming that defendants had caused plaintiff severe emotional distress. Defendants also moved to require plaintiff to submit to a mental examination and for an order to compel discovery.

**OVERVIEW:** Defendants sought reconsideration of an order granting a motion by plaintiff to quash a notice of deposition duces tecum and for a protective order. Defendants also filed a motion to compel discovery about witnesses for plaintiff. In the action, plaintiff claimed that the alleged tortfeasors caused her severe emotional distress. The magistrate judge initially granted the motion to quash based on the erroneous factual finding that condyloma was not a venereal disease. Upon reconsideration and after hearing arguments by the parties, the magistrate judge concluded that condyloma could be a venereal disease. Since defendants were seeking to depose the first doctor to treat plaintiff for condyloma, the magistrate judge ruled that defendants were entitled to depose the doctor and were entitled to review plaintiff's sealed medical records. The magistrate judge also allowed a mental health examination of plaintiff because she had placed her mental state at issue. The magistrate judge, however, denied the motion to compel discovery because defendants failed to make the showing required by Fed. R. Civ. P. 26.

**OUTCOME:** The magistrate judge on reconsideration denied plaintiff's motion to quash defendants' notice of deposition duces tecum and for a protective order and ordered that plaintiff submit to a mental examination. The magistrate judge, however, denied the motion for an order compelling discovery.

**CORE TERMS:** condyloma, reconsideration, deposition, mental health, protective order, emotional distress, venereal disease, mental state, disclosure, privacy, psychological, relevance, interview

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Torts > Damages > Compensatory Damages > Pain & Suffering > General Overview
Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview
*HN1* It is reasonable to assume that the revelation that a person had a sexually

Get a Document - by Citation - 65 Fair Empl. Prac. Cas. (BNA) 1209     Page 2 of 5

Case 3:06-cv-00974-MEF-TFM    Document 35-8     Filed 05/24/2007     Page 2 of 5

transmitted disease would cause considerable emotional distress. More Like This Headnote

Civil Procedure > Discovery > Methods > Mental & Physical Examinations

*HN2* The issue of whether conditions should be imposed on the mental health examination of a plaintiff is not easily decided. There are opinions that authorize the imposition of some restrictions in such examinations. The weight of the authority and reason, however, is against such restrictions. More Like This Headnote

Civil Procedure > Discovery > Undue Burdens

*HN3* Documents are entitled to protection from disclosure unless the party seeking disclosure shows a substantial need for the materials and that the substantial equivalent of the materials cannot be obtained without undue hardship. Fed. R. Civ. P 26(b)(3). More Like This Headnote

**JUDGES: [\*1]** CARROLL

**OPINION BY:** JOHN L. CARROLL

**OPINION: ORDER**

This case is currently pending before the court on the following matters:

(1) Reconsideration of this court's order granting the plaintiff's Motion to Quash the Defendants' Notice of Deposition Duces Tecum and for Protective Order dated February 15, 1994;

(2) Defendants' Motion for Order that the Plaintiff Submit to Mental Examination filed March 23, 1994; and

(3) Defendants' Second Motion for an Order Compelling Discovery filed March 24, 1994.

Each will be discussed in turn.

1. RECONSIDERATION

On March 2, 1994, the motion filed by the plaintiff to quash the deposition of Dr. Robert Ouellette and the production of the plaintiff's medical records was referred back to the undersigned Magistrate Judge for reconsideration. Upon reconsideration, the court concludes that its original order was based on an erroneous factual finding -- that condyloma cannot be considered a venereal disease. It is now clear, since the court has had the benefit of amplified arguments by the parties which were not provided prior to the court's order of February 15, 1994 that condyloma may, indeed, be considered a venereal disease. The question now becomes whether a deposition **[\*2]** of Dr. Ouellette and the production of the plaintiff's medical records is likely to lead to sufficient discoverable information to outweigh the plaintiff's privacy interests. See generally Mann v. University of Cincinnati, 824 F. Supp. 1190, aff'd 152 F.R.D. 119, 1993 U.S. Dist. LEXIS 16778 (S.D. Ohio 1993).

From the record before the court, it appears that Dr. Ouellette was the first physician who treated the plaintiff for condyloma. Consequently, the court now accepts the defendants' argument that the plaintiff's record of treatment by Dr. Ouellette may be relevant to questions relating to the plaintiff's claim of emotional distress. *HN1* It is reasonable to assume, as the defendants argue, that the relevation that a person had a sexually transmitted disease would cause considerable emotional distress.

Get a Document - by Citation - 65 Fair Empl. Prac. Cas. (BNA) 1209          Page 3 of 5

Case 3:06-cv-00974-MEF-TFM     Document 35-8     Filed 05/24/2007     Page 3 of 5

Having decided that the records are relevant, the court must decide whether Dr. Ouellette may be deposed. This question is an extremely close one. However, the court concludes that Dr. Ouellette may possess information about the plaintiff's mental state relating to her treatment for condyloma that is relevant **[*3]** within the meaning of Rule 26 of the Federal Rules of Civil Procedure.

The last question which must be decided is whether plaintiff's interest in the privacy of the physician's records is outweighed by their relevance. Again, this question is extremely close. Upon consideration of the issue, however, the court concludes that the defendants have shown sufficient relevance to warrant both access to the records and to Dr. Ouellette. The plaintiff's right to privacy is protected in large part by a protective order which the court has entered. The court considers the plaintiff's medical records and the deposition of Dr. Ouellette to be confidential and will treat any breach of that confidentiality, particularly with regard to the medical records, as an extremely serious matter.

2. THE MOTION FOR MENTAL EXAMINATION

The plaintiff has placed her mental state at issue by claiming that she has suffered severe emotional distress as the result of the defendants' conduct. The plaintiff intends to support her claim for damages for emotional distress by presenting evidence from mental health professionals who have treated her. Consequently, justice and fairness require that she be made available **[*4]** for examination by a defendants' expert. The defendants have shown good cause for the examination of the plaintiff. See Lowe v. Philadelphia Newspapers, Inc., 101 F.R.D. 296 (E.D.Pa. 1983); Postell v. Amana Refrigeration, Inc., 87 F.R.D. (N.D.Ga. 1980).

The plaintiff does not object to undergoing a mental health examination so long as the areas of inquiry are limited and the psychological interview is recorded in some fashion. The next question for resolution is whether the conditions which the plaintiff seeks to impose are appropriate.

*HN2* The issue of whether conditions should be imposed on the mental health examination of the plaintiff is not easily decided. There are opinions which authorize the imposition of some restrictions in such examinations. See, e.g., Zabkowicz v. West Bend Co., 585 F. Supp. 635 (E.D.Wis. 1984). The weight of the authority and reason, however, is against such restrictions. The court finds the reasoning of the decision in Tomlin v. Holecek, 150 F.R.D. 628 (D.Minn. 1993), to be particularly persuasive. In that case, the district court denied an order similar to the **[*5]** one which the plaintiff seeks in this case. For the reasons cited by the court in Tomlin v. Holecek, this court believes that restrictions on the examination of the plaintiff would be inappropriate. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The defendants have represented to the court that the evaluation will consist of an interview and the administration of a battery of psychological tests.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This ruling would be otherwise had the plaintiff presented the court with evidence that the defendants' expert is likely to use his examination as a vehicle to harass the plaintiff or to make embarrassing inquiries solely for the sake of embarrassment. There is no such evidence and the court will assume that the examination will take place with the appropriate professional decorum.

Get a Document - by Citation - 65 Fair Empl. Prac. Cas. (BNA) 1209          Page 4 of 5

Case 3:06-cv-00974-MEF-TFM     Document 35-8     Filed 05/24/2007     Page 4 of 5

3. THE DEFENDANTS' SECOND MOTION TO COMPEL

The defendants have filed a motion to compel seeking to have statements of persons who will be witnesses for the plaintiff. They also seek an order requiring the plaintiff to provide them with any and all documents made by the plaintiff relating **[*6]** to her allegations. Plaintiff's counsel has represented to the court that the statements of witnesses which the defendants seek were taken by a paralegal during the litigation phase of this case. The plaintiff, by way of response to the defendants' request for production of documents, has represented that any documents prepared by the plaintiff were prepared in anticipation of litigation. Consequently, the HN3 documents which the defendants are requesting are entitled to protection from disclosure unless the party seeking disclosure shows a "substantial need for the materials" and that the "substantial equivalent of the materials" cannot be obtained without "undue hardship." Rule 26(b)(3) F.R.Civ.Pro.; see also In Re Convergent Technology, 122 F.R.D. 555, 558-59 (N.D.Cal. 1988).

Two of the statements which the defendants seek, the statements of Parker Mount and "Cissy" DePasquale, were attached to the plaintiff's response to the defendants' motion for summary judgment. The defendants have also had the opportunity to depose Mr. Cockrell and the plaintiff and have been granted permission to take a further deposition of the plaintiff. They have failed to make **[*7]** the showing required by Rule 26.

For the foregoing reasons, it is hereby ORDERED:

(1) That the plaintiff's Motion to Quash Defendants' Notice of Deposition Duces Tecum and for Protective Order filed November 12, 1993 be DENIED. The clerk's office is hereby directed to provide counsel with a copy of the plaintiff's medical records from Dr. Robert Ouellette which have been placed under seal. This court's order of February 15, 1994 is hereby VACATED.

(2) That the defendants' Motion for Order that the Plaintiff Submit to Mental Examination filed March 23, 1994 be GRANTED. The examination shall be conducted in Montgomery, Alabama at a time agreed upon by counsel for the parties; and

(3) That the defendants' Second Motion for an Order Compelling Discovery filed March 24, 1994 be DENIED.

The clerk's office is directed to provide counsel for the parties with a copy of this order by facsimile.

DONE this 8th day of April, 1994.

JOHN L. CARROLL

UNITED STATES MAGISTRATE JUDGE

Service: **Get by LEXSEE®**
Citation: **1994 U.S. Dist. LEXIS 13878**
View: Full
Date/Time: Thursday, May 24, 2007 - 2:40 PM EDT

* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🟨Q - Questioned: Validity questioned by citing refs
⚠️ - Caution: Possible negative treatment

Get a Document - by Citation - 65 Fair Empl. Prac. Cas. (BNA) 1209     Page 5 of 5

Case 3:06-cv-00974-MEF-TFM     Document 35-8     Filed 05/24/2007     Page 5 of 5

- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis  | Terms & Conditions

Copyright ©  2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.